477 A.2d 508

**Peter FLAMINI, Appellant,**

**v.**

**GENERAL ACCIDENT FIRE AND LIFE
ASSURANCE CORPORATION.**

Superior Court of Pennsylvania.

Argued Sept. 14, 1983.

Filed May 11, 1984.

Petition for Allowance of Appeal Denied Aug. 13, 1984.

John M. Kenney, Media, for appellant.

Roger J. Harrington, Philadelphia, for appellee.

Before CAVANAUGH, MONTEMURO and HESTER, JJ.

HESTER, Judge:

This is an appeal from a Judgment and Order of the Court of Common Pleas, Delaware County, Pennsylvania, which modified an arbitration panel's award to appellant based on a fleet vehicle policy of insurance issued by appellee, General Accident Fire and Life Assurance Corporation (hereinafter, General Accident) to appellant's employer, Upper Darby Township. The issue before us is whether an employee can cumulate or "stack" the uninsured motorist coverage under his employer's fleet vehicle insurance policy.

The facts are undisputed and are as follows. On May 11, 1978, appellant was employed as a police officer for Upper Darby Township, Delaware County, Pennsylvania. On this date, while on duty and seated in a police vehicle owned by the Township, appellant sustained bodily injuries when the vehicle in which he was seated was struck by a hit and run

vehicle.[1] At the time of the accident, appellee General Accident was the insurance carrier for the fleet of vehicles owned by Upper Darby Township and used by its police department.

The insurance policy in question is a single policy covering 175 vehicles. The policy provides uninsured motorist coverage with limits of liability of "fifteen thousand dollars each person/thirty thousand dollars each accident". The limits of liability section provides:

III. LIMITS OF LIABILITY

Regardless of the number of (1) persons or organizations who are insureds under this policy, (2) persons who sustain bodily injury, (3) claims made or suits brought on account of bodily injury, or (4) highway vehicles to which this policy applies,

(a) The limit of liability stated in the declarations as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting "each person", the limit of liability stated in the declarations as applicable to "each accident" is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident.

Upper Darby Township paid a premium for this uninsured motorist coverage of $4.00 for each vehicle for an annual total of $760.00 for the fleet of 175 vehicles.[2]

Pursuant to its interpretation of the policy, General Accident offered appellant the amount of $15,000.00. This amount reflected General Accident's belief that this was the maximum benefit due under the uninsured motorist provision of its contract with Upper Darby Township. Appellant refused to accept this offer in full settlement of his claim,

1. The owner/operator of said vehicle has not been ascertained.

2. The extra $60.00 premium amount was explained as being derived from the addition of fifteen vehicles to the policy subsequent to the time that it was written.

contending instead that he was entitled to cumulate or "stack" the uninsured motorist coverage of each of the 175 vehicles under the fleet policy. As a result of the impasse, appellant requested arbitration by the American Arbitration Association, pursuant to the following paragraph contained in the subject policy:

F. Arbitration.

If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured highway vehicle because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this insurance, then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration, which shall be conducted in accordance with the rules of the American Arbitration Association unless other means of conducting the arbitration are agreed to between the insured and the company, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this insurance.

On January 25, 1980, General Accident filed a Complaint in Equity in the Court of Common Pleas of Philadelphia County, seeking an injunction to stop the proposed arbitration. In its complaint, General Accident contended that the arbitration proceedings were unnecessary because its outstanding offer of $15,000.00 was the extent of its obligation under the policy and the maximum which the arbitrators could award under the circumstances. Appellant filed preliminary objections to the complaint raising the question of venue and citing the arbitration clause as the exclusive remedy for resolving the dispute. By an order of February 6, 1980, the Honorable Harry A. Takiff denied General Accident's request for injunctive relief and ordered the

parties to proceed "to arbitration of American Arbitration Association Case No. 1420001280J."

General Accident did not file an appeal from Judge Takiff's order. Instead, General Accident filed another Complaint in Equity seeking a mandatory injunction that the arbitration of appellant's claim proceed under the Arbitration Act of 1927 [3] then in effect. Appellant filed an answer to General Accident's complaint requesting that it be dismissed and alleging that the issues raised in it had been finally litigated before Judge Takiff. The lower court, Judge Doty, dismissed General Accident's complaint and in its opinion explained that "this court will not undertake to assume control over a matter which was originally heard by another judge of this jurisdiction." Although there was no extensive discussion, Judge Doty supported his decision by reference to the doctrine of res judicata and the policy against forum or judge shopping. However, no decision on the question whether the arbitration was to be governed by the rules of common law or by the Arbitration Act of 1927 was reached. [4]

---

**3.** Act of April 25, 1927, P.L. 381, No. 248 as amended, 5 P.S. 161 et seq. The Act of 1927 was repealed by the JARA Continuation Act of 1980, Act of October 5, 1980, P.L. 693, No. 142, § 501(c), effective in 60 days. Statutory arbitration is now provided by the Judicial Code, 42 Pa.C.S.A. §§ 7301–7320.

**4.** General Accident filed an appeal from Judge Doty's order to our court. We affirmed Judge Doty's refusal to hear the matter since General Accident had the duty to appeal Judge Takiff's order. *General Accident Fire and Life Assurance Company v. Flamini,* 299 Pa.Super. 312, 445 A.2d 770 (1982) (Spaeth, J.). In that case, the record did not disclose what arguments were made before Judge Takiff. Judge Takiff's order denied the relief specifically requested by General Accident—an injunction against any arbitration. His order, however, referred the arbitration to proceed at common law. Though Judge Spaeth's opinion indicates that Judge Takiff did refer this matter to common law arbitration, Judge Spaeth's later statements do not support a conclusion that the order should have res judicata effect as to the type of arbitration which would proceed. As Judge Spaeth stated, 299 Pa.Super. at 317, 445 A.2d at 773:

"The record does not disclose what arguments were made before Judge Takiff. [3] We may assume—the assumption most favorable to appellant—that the judge heard no argument as to what kind of arbitration should take place, in the event he determined that there

On September 17, 1980, a hearing was held before a three-member arbitration panel pursuant to the rules of the American Arbitration Association. On October 29, 1980, the arbitration panel awarded appellant $175,000.00, the total amount of appellant's actual loss. The panel permitted appellant to "stack" the uninsured motorist coverage of $15,000.00 per person per accident available under the fleet policy and multiply that amount by the 175 vehicles owned by Upper Darby Township and covered under the policy, limited however, to appellant's actual loss. Upon its consideration of appellant's petition to confirm the award, the lower court modified the amount of the award to $15,000.00, since it found an error of law committed by the panel in permitting appellant to "stack" the uninsured motorist coverage of his employer's fleet policy. This appeal followed.

■ Preliminarily, appellant contends that the lower court erred in finding the arbitration in question subject to the Arbitration Act of 1927, 5 P.S. § 161 et seq.[5] Appellant argues that the award was rendered at common law with all its incidents of formality of award and narrow power of court review. *Runewicz v. Keystone Insurance Co.,* 476

should be some kind of arbitration. Nevertheless, the judge did decide that there should be some kind of arbitration.

[3] Appellee Flamini asserts in his Brief, at 10, that Judge Takiff in fact 'listened to evidence on whether the arbitration should go forward and, if so, under what form'. Perhaps so. But nothing in the record supports appellee's assertion. Neither appellant nor appellee has filed of record any notes of testimony from the hearing before Judge Takiff nor any affidavits as to what was argued before him."

In this appeal, appellant does not insist that the question of the type of arbitration involved was determined by Judge Takiff's order. We are inclined to agree that this aspect of the issue is settled. Instead, appellant narrows his challenge to the applicability of the Arbitration Act of 1927 for other reasons which will be addressed, infra.

**5.** At the date of the arbitration hearing, September 17, 1980, and at the time appellant filed his petition to confirm the award, this version of the arbitration statute governed. See footnote 3, supra.

Pa. 456, 383 A.2d 189 (1978); *Harwitz v. Adams,* 406 Pa. 539, 178 A.2d 617 (1962).[6]

The lower court ruled that the arbitration was governed by the Arbitration Act of 1927 based on § 16 of the Act which provides:

State and Municipal Contracts

The provisions of this act *shall* apply to any written contract to which the Commonwealth of Pennsylvania, or any agency or subdivision thereof, or any municipal corporation or political division of the Commonwealth shall be a party. (Emphasis added) 5 P.S. § 176.[7]

Pursuant to subsection (d) of § 11 of the Act which permits the court to modify or correct an award found to be against the law[8], the lower court modified the arbitration award from $175,000.00 to $15,000.00 since it found the "stacking" of coverage in the circumstances presented to be against the law of Pennsylvania.

■ In construing § 16 of the Arbitration Act (5 P.S. § 176), our courts have consistently held that in contracts

6. An arbitration award at common law is not reversible on the basis of error of fact or law committed by the arbitrators. Their award may be vacated only on a showing that fraud, misconduct, corruption or other irregularity on their part caused an unjust or unconscionable award. See, Runewicz, supra; Harwitz, supra.

7. Upper Darby Township is a township of the first class and is a political division of the Commonwealth, as is indicated in the Act.

8. Section 11, 5 P.S. § 171 provides:
    In either of the following cases the court shall make an order modifying or correcting the award upon the application of any party to the arbitration:
    (a) Where there was an evident material miscalculation of figures, or an evident material mistake in the description of any person, thing, or property referred to in the award.
    (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted.
    (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.
    (d) Where the award is against the law, and is such that had it been a verdict of the jury the court would have entered different or other judgment notwithstanding the verdict.
    The court may modify and correct the award or resubmit the matter to the arbitrators.

containing arbitration clauses to which the Commonwealth, its agencies, municipal corporations or political divisions are parties, the application of the Act is mandatory and non-waivable. See *Pennsylvania Turnpike Commission v. Sanders & Thomas, Inc.*, 461 Pa. 420, 336 A.2d 609 (1975); *John A. Robbins Co. v. Airportels, Inc.*, 418 Pa. 257, 210 A.2d 896 (1965); *Acchione v. Commonwealth*, 347 Pa. 562, 32 A.2d 764 (1943); *Seaboard Surety Co. v. Commonwealth*, 345 Pa. 147, 27 A.2d 27 (1942); *Philadelphia Housing Authority v. Turner Construction Co.*, 343 Pa. 512, 23 A.2d 426 (1942); *J.M. Davis Co. v. Shaler Township*, 332 Pa. 134, 2 A.2d 708 (1938).

Appellant concedes that while private parties may contract for common law arbitration, the Commonwealth, its agencies, municipal corporations or political divisions may not do so. See *Pennsylvania Turnpike Commission v. Sanders & Thomas, Inc.*, supra; *John A. Robbins Co. v. Airportels, Inc.*, supra. However, appellant submits that the purpose of § 16 of the Arbitration Act of 1927 is to prevent the Commonwealth, its agencies, municipal corporations and political divisions from limiting their rights on appeal in matters affecting their important interests which first are submitted to arbitration for resolution. He urges Upper Darby Township has no interest in the outcome of the case since it is not a party to the litigation; consequently, the application of the Act in the circumstances of this case would not further the purported purpose of § 16. Appellant's argument has a certain plausability to it but we are convinced that the Act applies in this case.

The insurance policy in question was entered into between General Accident and Upper Darby Township, a political division of the Commonwealth. The language of § 16 only requires Upper Darby Township to be a party to the contract in order for the Act of 1927 to apply. See *Pennsylvania Turnpike Commission v. Sanders & Thomas*, supra; *John A. Robbins Co. v. Airportels, Inc.*, supra; *Acchione v. Commonwealth*, supra; *Seaboard Surety Co. v. Commonwealth*, supra; *Philadelphia Housing Authori-*

*ty v. Turner Construction Co.,* supra; *J.M. Davis Co. v. Shaler Township,* supra. This fact alone is sufficient to convince us that the Act applies. However, there are further reasons.

■ Appellant, injured while occupying a Township police vehicle covered under the subject policy, derives his claim only from his status as a third party beneficiary of the uninsured motorist provision in the policy. Although appellant is a "person making claim" under the arbitration provision, he is not a party to the contract and has sacrificed nothing to secure his contract right. As such, appellant's contract right in the policy is subject to any limitations imposed by law or inherent in the policy. See, Restatement (Second) Contracts § 309 comment a, c, § 313 (1981); See also *Clayton v. National Electric Products Corporation,* 421 Pa. 375, 219 A.2d 595 (1966); *Rivers v. Delaware Valley Mutual Casualty Co.,* 196 Pa.Super. 475, 175 A.2d 87 (1961); *Miller v. Travelers Insurance Company,* 143 Pa.Super. 270, 17 A.2d 907 (1941).

Furthermore, language of the arbitration provision in the subject policy calling for arbitration to be conducted in accord with the rules of the American Arbitration Association and lacking specific reference to the Arbitration Act of 1927 has been found to mean that the arbitration was at common law in cases involving contracting *private* parties. See *Runewicz v. Keystone Insurance Co.,* supra; *Wingate Construction Co. v. Schweizer Dipple, Inc.,* 419 Pa. 74, 213 A.2d 275 (1965). The language in the arbitration provision in question in those cases also provided that the parties were to be bound by the award, which is inconsistent with the broad judicial review permitted under the Arbitration Act of 1927. *Runewicz v. Keystone Insurance Co.,* supra; *Wingate Construction Co. v. Schweizer Dipple, Inc.,* supra. On the other hand, our courts have consistently held that the imperative language of § 16 mandates its application when the Commonwealth, its agencies, municipal corporations or political divisions are parties to the contract, even though the subject arbitration provision contains language

to the effect that the award is final and does not make reference to any statutory remedy. See *Acchione v. Commonwealth,* supra; *Philadelphia Housing Authority v. Turner Construction Co.,* supra; *Seaboard Surety Co. v. Commonwealth,* supra; *J.M. Davis Co. v. Shaler Township,* supra.

While it is true that these cases involve the Commonwealth or one of its political divisions, as a party to both the litigation and to the contract containing the arbitration provision brought into question, § 16 only requires that the Commonwealth or its political divisions be a party to the contract. Moreover, if we assume as correct appellant's construction of the purpose of § 16 i.e., to limit the Commonwealth and its political divisions from contracting away the right of broad judicial review in matters affecting their interests (for our own examination of the legislative history of the Act of 1927 fails to reveal such express purpose) we believe Upper Darby Township has an important interest in the outcome of the case even though it is not a party to the litigation.

Upper Darby Township paid a total premium of $760.00 for coverage of its 175 vehicles. The coverage on the fleet policy provides uninsured motorist coverage for each vehicle in the amount of "15 thousand per person, 30 thousand per accident." "Stacking" of the coverage under appellant's theory would in effect push the contractual limits of uninsured motorist insurance coverage up to the amounts of 2.6 million dollars per person/ 5.25 million dollars per accident. Such increased exposure to risk by General Accident could lead to greater expenditure of public monies by the Township, assuming, not unreasonably, that the increased exposure to risk would be passed onto the governmental unit in the form of greater insurance costs. It would be reasonable to find that the legislature intended to preserve a broad scope of judicial review for just the situation presented here.

■ Thus, we are constrained to conclude that under the Arbitration Act of 1927, a political division of the Common-

wealth is not permitted to contract for common law arbitration. See, e.g., *Pennsylvania Turnpike Commission v. Sanders & Thomas,* supra. It may not do so indirectly, or for that matter inadvertently. We therefore hold that the lower court did not err in applying the Arbitration Act of 1927 since it had before it a public contract containing a provision to arbitrate.

The issue squarely before us is whether an employee who was injured while occupying a vehicle owned by his employer and who was insured under the employer's fleet insurance policy may cumulate or "stack" the uninsured motorist coverage on each of the insured vehicles. The lower court ruled that appellant could not and therefore modified the initial award of $175,000.00 to $15,000.00.

The identical question was recently addressed by the Pennsylvania Supreme Court in *Utica Mutual Insurance Co. v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005 (1984). Therein, the decedent was killed while operating an automobile owned by his employer. The executrix of the decedent's estate filed an action for uninsured motorist benefits against Utica Mutual Insurance Company (hereinafter Utica), the motor vehicle insurer for the decedent's employer. The fleet policy issued by Utica insured fifteen vehicles with limits of liability of $15,000.00 each person/$30,000.00 each accident. The executrix sought to cumulate, or "stack," the uninsured motorist benefits under the multiple coverages. The lower court permitted cumulation of coverage under the fleet policy, and this Court affirmed. *Utica Mutual Insurance Co. v. Contrisciane,* 312 Pa.Super. 549, 459 A.2d 358 (1983).

The Pennsylvania Supreme Court reversed, holding that a person who is insured only because of his status as an occupant in a vehicle insured under a fleet policy may not stack coverages. Both the policy in *Utica* and in the case sub judice contained the standard provision approved for use by the Pennsylvania Insurance Commissioner in policies in Pennsylvania, which specifically provided the following regarding "Persons Insured" under the policy:

Each of the following is an insured under this insurance to the extent set forth below:

(a) the named insured and any designated insured and, while residents of the same household, the spouse and relatives of either;

(b) any other person while occupying an insured highway vehicle; and

(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an insured under (a) or (b) above.

The insurance applies separately with respect to each insured, except with respect to the limits of the company's liability.

The Supreme Court categorized the above classifications as "class one", "class two", and "class three" coverage.

In denying multiple coverage, that Court stated:

decedent's entitlement to coverage was predicated on his occupation of the vehicle at the time of the accident: a "class two" type of coverage. A claimant whose coverage is solely a result of membership in this class has not paid premiums, nor is he a specifically intended beneficiary of the policy. Thus, he has no recognizable contractual relationship with the insurer, there is no basis upon which he can reasonably expect multiple coverage. (footnote omitted)

*Id.*, 312 Pa.Superior Ct. at 552, 459 A.2d at 361. The Supreme Court found no basis upon which to allow the decedent's estate to stack the insurance limits applicable to the other vehicles. Recovery under the Utica policy was limited to the $15,000.00 coverage applicable to the vehicle being operated by the decedent at the time of the accident.

The *Utica* decision serves as binding precedent for the case at bar. Appellant did not pay premiums on the fleet vehicle policy insurance under which he seeks to cumulate coverages, nor did he have any recognizable contractual relationship with the insurer. The policy was is-

 

sued to and paid for by his employer, Upper Darby Township. Appellant was not a named insured or a designated insured of the policy; rather, his entitlement to uninsured motorist benefits under the subject policy rested upon "class two" coverage. Consequently, just as the decedent's estate in *Utica* was denied the right to cumulate the uninsured motorist limits for the fleet policy, we can find no basis to permit appellant to stack the multiple coverages in the policy challenged herein.

Judgment holding General Accident liable and modifying appellant's award to $15,000.00 is affirmed.