525 A.2d 411

**SELECTED RISKS INSURANCE COMPANY, Appellant,**

v.

**Richard L. THOMPSON.**

Superior Court of Pennsylvania.

Argued Oct. 6, 1986.

Filed April 27, 1987.

Petition for Allowance of Appeal
Granted Sept. 17, 1987.

---

Timothy J. Burdette, Pittsburgh, for appellant.

Timothy P. O'Brien, Pittsburgh, for appellee.

Before DEL SOLE, KELLY and POPOVICH, JJ.

DEL SOLE, Judge:

This is an appeal from the Judgment resulting from the entry of the trial court Order denying Appellant's petition to Modify, Correct, or Vacate an Award of Arbitrators, and granting Appellee's petition to Confirm the Arbitration Award.

By its brief, Appellant contends that the trial court erred in refusing to apply the "contrary to law" standard of review set forth in § 7302(d)(2) of the Uniform Arbitration Act (the Act), 42 Pa.C.S.A. § 7301, et seq. Section 7302(d)(2) provides that, under limited circumstances, an award may be modified or corrected where the award is contrary to law, and is such that, had it been a verdict of a jury, the court would have entered a different judgment, or judgment N.O.V. However, the trial court declined to utilize this standard and held that none of the "limited circumstances" calling for its application was present. *See* 42 Pa.C.S.A. 7302(d)(2).

The trial court instead opined that the appropriate scope of review was that which is found in § 7315(a) of the Act. Under this standard, an award may be modified only where:

(1) there was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;

(2) the arbitrators awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

(3) the award is deficient in a matter of form, not affecting the merits of the controversy.

After examining the arguments contained in Appellant's petition, the trial court concluded that they raised questions of law. Consequently, the trial court declined to address their merits, inasmuch as the scope of review, as set forth in § 7315, restricted that court from resolving legal issues.

■ We have examined the terms of Appellant's Uninsured Motorist Endorsement and hold that the "contrary to law" standard of review should have been applied. Accordingly, the issues charging mistakes of law allegedly committed by the arbitration panel were properly raised before the trial court.

The Endorsement specifically provided that "[a]rbitration shall be conducted in accordance with the Pennsylvania Arbitration Act of 1927." Although the 1927 Act was repealed and replaced by the Act of 1980, our present legislation contains provisions which govern agreements to arbitrate under the prior Act. Section 501(b) of the 1980 Act provides as follows:

[t]he provisions of 42 Pa.C.S. 7302(d)(2) (relating to special application) shall be applicable to any nonjudicial arbitration pursuant to:

. . . . .

(2) An agreement heretofore or hereafter made which expressly provides for arbitration pursuant to the former provisions of the Act of April 25, 1927 (P.L. 381, No. 248), relating to statutory arbitration.

Act of 1980, Oct. 5, P.L. 693, No. 142. It is apparent to us that the instant Endorsement falls within the purview of § 501(b)(2), as it relates to the standard enunciated in § 7302(d)(2). Therefore, we hold that the "contrary to law" scope of review should have been applied by the trial court. For this reason, we shall address the questions of law presented by Appellant in this appeal. *See Martin v. State Automobile Ins. Association*, 344 Pa.Super. 531, 496 A.2d 1233 (1985), and *Ragin v. Royal Globe Insurance Compa-*

*ny*, 315 Pa.Super. 179, 461 A.2d 856 (1983) for discussions on § 501(b) of the 1980 Act.

Appellant argues that Appellee should not have been permitted to stack the uninsured motorist coverage provided in the policy issued to the New Galilee Voluntary Fire Department. Appellant draws support for this argument from our Supreme Court's discussion on stacking in *Utica Mutual Insurance Company v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984). In that bellwether decision, the Court held that the ability of a claimant to stack depends upon his/her status as a specifically intended beneficiary under the policy. *Id.* at 504 Pa. at 340, 473 A.2d at 1012. The Court delineated three classes of insureds for stacking purposes:

Class One—the named insured and any designated insured;

Class Two—any other person while occupying an insured's vehicle; and,

Class Three—any person with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by a Class One or Class Two insured.

*Id.* at 504 Pa. at 338, 473 A.2d at 1010. The *Utica* court concluded that stacking of uninsured motorists coverage would extend to persons found in the Class One category. *Id.* at 504 Pa. at 340, 473 A.2d at 1011.

Appellant contends that, in the case at bar, stacking was improper inasmuch as Appellee was not a "named" or "designated" insured under the policy. Rather, it is argued that the "New Galilee Voluntary Fire Company", *an entity*, was the Class One insured for stacking purposes. Appellant relies upon a recent Commonwealth Court case, *Zern v. Muldoon, et al.*, — Pa.Commw. —, 516 A.2d 799 (1986), in which that court concluded: "the history, structure, organization, and *public duty* of volunteer fire companies distinguish them as an entity from any other organization in existence in this Commonwealth today." *Id.* at 516 A.2d at 804. However, this statement must be read in light of the

entire opinion. The *Zern* court was confronted with the narrow issue of whether volunteer fire departments are entitled to immunity for damages arising from their actions. After embarking upon a lengthy historical profile of the legislative treatment of voluntary fire departments in this Commonwealth, the court concluded that these groups occupy a unique position within the framework of publically-assisted organizations. The fact that the Commonwealth Court chose to use the phrase "distinguish them as an entity" does not evidence support by that court of Appellant's theory that New Galilee should be treated as a distinct entity for insurance stacking purposes.

We have examined Pennsylvania case law which discusses unincorporated associations, such as New Galilee, and conclude that they are not recognized as entities at law, and have no existence separate and apart from that of their individual members. *DeVillars v. Hessler*, 363 Pa. 498, 502, 70 A.2d 333, 335 (1950). *See also* P.L.E., Associations and Clubs, § 1. Therefore, we find that Appellee, as well as the other members of New Galilee, were "Class One" insureds within the meaning of *Utica, supra*. Likewise, we agree with the arbitration panel's decision to permit stacking of uninsured motorist coverage under the facts of this case.[1]

Appellant next argues that the arbitrators' award was unlawful because the panel refused to grant Appellant a

---

1. We recognize that recently in *Miller v. Royal Insurance Co.*, 354 Pa.Super. 20, 510 A.2d 1257 (1986), this Court opined that uninsured motorist coverage could not be stacked under corporate fleet policies. *Id.* at 354 Pa.Superior Ct. at 22, 510 A.2d at 1259. Appellant's "Business Auto Policy" is, in essence, a fleet policy; however, the factual dissimilarities between *Miller* and the instant case render our holding in *Miller* inapplicable. In *Miller*, the appellee was an employee of a corporation who was not a Class One "insured" under the policy. By comparison, Appellant, in this case, is a member of an unincorporated association who, as discussed *supra*, was an "insured" according to the terms of the policy. The record shows that Appellant was aware that the insurance contract would not be a standard fleet policy. This is evidenced by the fact that the fire company was characterized as an "Other", rather than as a corporation, or partnership. Given the unique factual circumstances of this case, we are convinced that stacking was within the reasonable expectations of both parties.

set-off in the amount of worker's compensation benefits paid to Appellee by another insurance carrier. Appellant draws our attention to the Uninsured Motorist Endorsement which states:

> [a]ny amount payable under this insurance shall be reduced by:
>
> a. All sums paid or payable under any workers compensation, disability benefits or similar law....

(Reproduced Record, p. 20a).

■ We have examined the Uninsured Motorist Act and find that it does not contain a provision under which an insurer may have a dollar-for-dollar set-off of no-fault coverage against benefits received from other sources. Likewise, in *Boris v. Liberty Mutual Insurance Co.*, 356 Pa.Super. 532, 538, 515 A.2d 21, 25 (1986), this Court recently opined that the Worker's Compensation Act does not prohibit an injured person from seeking uninsured motorist benefits in addition to worker's compensation payments already received under that Act. Indeed, if our legislature had intended to allow set-off of payments made under the two statutes, it would have expressly provided so. Absent a showing of such intent by the legislature, we decline to enforce an insurance contract provision not manifested by statute. *See also Tucci v. State Farm Insurance Co.*, 503 Pa. 447, 454–455, 469 A.2d 1025, 1029 (1983), citing *Carnevale v. Sentry, A Mutual Company*, 469 F.Supp. 681 (W.D.Pa.1979) (court refused to enforce a set-off provision in plaintiff's no-fault policy deducting no-fault payments for hospital and medical treatment from uninsured motorist coverage for noneconomic loss).

Finally, Appellant argues that there exists in Pennsylvania no law under which the panel could impose a duty upon an insurance carrier to prorate the coverage where one claimant has already settled with the insurer. Appellant, therefore, ask that the $7,000.00 settlement paid to Kenneth Price, who was also injured in the accident, be deducted

from the amount of coverage available under the uninsured motorist policy.

The record shows that after Appellee and Price were injured, both men notified Appellant of their intent to make claims for their injuries. Price's counsel objected to Appellant's proposal that the two men's claims be heard by the same arbitration board. Prior to any hearing on Price's claim, Appellant settled that claim for the sum $7,000.00. After the arbitration panel heard Appellee's claim, it decided that the value of his claim was $200,000.00. Price's already-settled claim was found to be worth $7,000.00, the settlement amount. Therefore, the total value of the claims arising from the single accident was $207,000.00. However, the panel also determined that the coverage available under the policy amounted only to $180,000.00. It was then decided that Appellant was under the duty to "make an equitable apportionment" between Price and Appellee of the available coverage, based upon the value of their individual claims. It was concluded that Price's pro rata share of the coverage was 3.3% or $5,940.00, and that Thompson's claim was 96.7% or $174,060.00.

■ We find that proration was inappropriate in the instant case. Absent a finding of bad faith or collusion committed by the parties to the settlement, the arbitration panel was without authority to affect such an agreement. Therefore, Appellant should have received a $7,000.00 credit for the settlement paid to Price, irrespective of the fact that the insurance coverage, available to Appellee, would have been reduced by that amount. We point out, however, that our decision on this matter is confined to the disbursement of benefits according to uninsured motorist policies.

Case remanded for recalculation of arbitration award in accordance with this Opinion. Jurisdiction of this Court relinquished.

KELLY, J. concurs in the result.