552 A.2d 1382

**SELECTED RISKS INSURANCE CO., Appellant,**

v.

**Richard L. THOMPSON, Appellee.**

Supreme Court of Pennsylvania.

Argued March 9, 1988.

Decided Jan. 26, 1989.

Reargument Denied July 19, 1989.

Papadakos, J., concurred and dissented and filed opinion in which Larsen, J., joined.

Timothy J. Burdette, Anstandig, Levicoff & McDyer, Pittsburgh, for appellant.

Seymour A. Sikov, Timothy P. O'Brien, Pittsburgh, for appellee.

132

Before LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION

McDERMOTT, Justice.

Appellant, Selected Risks Insurance Company (S.R.I.) appeals from the order of the Superior Court which affirmed the order of the Court of Common Pleas of Allegheny County denying its "Petition to Vacate, Modify or Correct" an arbitration panel's award.[1] The award of $174,060.00 had been entered in favor of appellee, Richard L. Thompson.

The facts leading up to the present controversy are as follows. In October, 1981, S.R.I. issued a comprehensive insurance policy to the New Galilee Volunteer Fire Department, an unincorporated volunteer fire association serving the residents of New Galilee, Beaver County, Pennsylvania. This policy, designated as a "Business Auto Policy" and issued in the name of the New Galilee Volunteer Fire Department, covered six (6) vehicles owned and operated by the department. The policy provided for uninsured motorist coverage, as mandated by the then extant Uninsured Motorist Act.[2] The applicable declarations limited S.R.I.'s uninsured motorist liability to $30,000.00 per accident for each vehicle. The association paid annual premiums totaling $30.00 for this coverage. This policy, as stated above, was issued in the name of the association and there were no individuals specified as named insureds.

On April 15, 1982, appellee, an elected trustee and volunteer firefighter with the department, while responding to an alarm, was involved in a collision with an automobile driven by an uninsured motorist. Upon impact appellee

1. Technically, the Superior Court modified the award to reflect its holding that the arbitration panel was without authority to pro-rate the available coverage between appellee and a second individual involved in the accident. However, this issue is not before us in this appeal and in all other respects the court affirmed the arbitrators' decision. *See Selected Risks Insurance Company v. Thompson,* 363 Pa.Super. 34, 525 A.2d 411 (1987).

2. Act of August 14, 1963, P.L. 909, § 1, *as amended,* 40 P.S. § 2000.

was thrown from the vehicle and sustained head and spinal cord injuries. As a result of these injuries appellee has been unable to resume his regular profession as an independent trucker. By the time the arbitration proceeding commenced appellee had received workmen's compensation benefits totalling $49,660.35 from P.M.A. Insurance Company. These benefits were paid pursuant to a policy issued to the Borough of New Galilee.

Appellee thereafter filed a claim with S.R.I. seeking uninsured motorist benefits under the policy. The parties disagreed as to the amount of coverage available. Consequently, the matter proceeded to arbitration in accordance with the Uniform Arbitration Act.[3] The arbitrators unanimously agreed that appellee's compensatory damages were $200,-000.00. However, on the issue of whether appellee should be permitted to cumulate or "stack" the $30,000.00 uninsured motorist limit for each of the six insured vehicles under the policy, the arbitrators, in a 2–1 decision, allowed appellee to aggregate the coverages to reach the $180,-000.00 maximum limit. The arbitrators based their conclusion on the fact that although appellee was not a "named insured" under the policy, it was proper to infer, given the nature of an unincorporated association, that the parties intended each member of the fire department be deemed a "designated insured" for purposes of stacking uninsured motorist benefits. Therefore, under the stacking guidelines enunciated in *Utica Mutual Insurance Company v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984), the arbitrators reasoned that appellee was a member of the "class one" category of "uninsured" and entitled to stack the coverages.

On October 17, 1985, S.R.I. filed a "Petition to Vacate, Modify or Correct Statutory Arbitration Award" in the Court of Common Pleas of Allegheny County asserting, *inter alia*, that the arbitrators exceeded their authority and entered an award contrary to law. It maintained that the

3. Act of October 5, 1980, P.L. 693, No. 142, § 501(a), 42 Pa.C.S. § 7301 *et seq.*

court, pursuant to sections 7314(a)(1)(iii) [4] and 7302(d)(2) [5] of the Uniform Arbitration Act, was empowered to vacate, modify or correct the award. The court disagreed and instead concluded that the proper scope of review was governed by section 7315(a) of the Act, which provides that an award may be modified or corrected only under the following circumstances:

(1) there was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;

(2) the arbitrators awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

(3) the award is deficient in a matter of form, not affecting the merits of the controversy.

42 Pa.C.S. § 7315(a). The court, having determined that the issues raised in appellant's petition were questions of law, and therefore beyond the narrow constraints of section 7315(a), declined to address the merits, denied the petition, and granted appellee's petition to confirm the award.

On appeal, the Superior Court held that the "contrary to law" standard, as set forth in section 7302(d)(2), should have been applied by the lower court. Nonetheless, the Superior Court affirmed the award. Thereafter, S.R.I. petitioned

4.  Section 7314(a)(1)(iii) provides:
    (a) General rule.—
        (1) On application of a party, the court shall vacate an award where:
        . . . .
        (iii) the arbitrators exceeded their powers.

5.  Section 7302(d)(2) provides:
    (d) Special application.—
        . . . .
        (2) Where this paragraph is applicable a court in reviewing an arbitration award pursuant to this subchapter shall, notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.

this Court for allowance of appeal, which was granted. We now affirm in part and reverse in part.

S.R.I. raises two basic issues in this appeal: whether appellee, as a member of an unincorporated volunteer fire association, should be permitted to stack the uninsured motorist coverages provided under the "Business Auto Policy" issued in the name of the association; and whether the uninsured motorist coverage awarded should be reduced or "set-off" by the amount of workmen's compensation benefits received by appellee.[6]

The first issue, involving the propriety of cumulating benefits by a member of a volunteer fire association, brings us directly to our decision in *Utica Mutual, supra.* In that case we discussed the different classifications contained in most uninsured motorist policies, e.g., "class one", "class two" and "class three" coverage, and then proceeded to delineate the circumstances under which one is entitled to stack uninsured motorist coverages.[7]

There we held, *inter alia*, that the right to stack coverages lies with all persons within the "class one" category of "insured", and that a "class two" claimant, who is insured only because he is an occupant in a vehicle, is not entitled to stack coverages. The rationale underlying our decision was that a claimant whose coverage was solely a result of membership in the second category had not paid premiums, nor was he a specifically intended beneficiary of the policy.

---

**6.** Appellant, in a third issue, asks us to revisit *Utica Mutual Insurance Company v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005 (1984), and abolish the practice of stacking coverages altogether. We see no reason to entertain this issue.

**7.** The terms of the policy at issue in this case approximate those classifications and therefore it is appropriate to apply this analysis to the question at hand. The uninsured motorists endorsement found in the S.R.I. policy contained the following provision:
   D. WHO IS INSURED
      1. You or any family member.
      2. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
      3. Anyone for damages he is entitled to recover because of bodily injury sustained by another insured.

Thus, he had no recognizable contractual relationship with the insurer, and there existed no basis upon which he could reasonably expect multiple coverage. *Utica Mutual,* 504 Pa. at 338–39, 473 A.2d at 1010–11.

We now turn to the factual circumstances of this case to decide whether appellee, as a member of a volunteer fire department, should be permitted to aggregate the uninsured motorist coverage available for each of the six vehicles insured under the policy. Resolution of this question will turn on whether appellee was a specifically intended beneficiary of the policy.[8]

Prior to arbitration the parties stipulated that New Galilee Fire Department was an unincorporated association. It was primarily this fact that weighed heavily in the minds of both the arbitrators and the Superior Court in concluding that appellee was a "class one" insured for stacking purposes.[9] The Superior Court, relying on this Court's decision in *DeVillars v. Hessler,* 363 Pa. 498, 70 A.2d 333 (1950), concluded that unincorporated associations "are not recognized as entities at law, and have no existence separate and apart from that of their individual members." *Selected Risks Insurance Company v. Thompson,* 363 Pa.Super. 34, 39, 525 A.2d 411, 413 (1987) *citing* P.L.E. Associations and Clubs § 1. However, the court's reliance on these authorities was misplaced.

In *DeVillars, supra,* the issue before the Court was whether a member of an unincorporated fraternal association could institute an action in tort against the association and its officers for their alleged negligence in connection

---

**8.** There is no allegation that appellee actually paid the premiums.

**9.** In addition, the Superior Court pointed to the fact that on the pre-printed declarations page of the business automobile policy the company's agent identified the insured by checking the box indicated "OTHER" rather than those reserved for corporations, partnerships or individuals. While admitting that the policy was in essence a fleet policy, the court concluded that the above identification evidenced that S.R.I. was aware that the policy would not be a standard fleet policy. We do not consider the above a dispositive fact; rather it was a technical necessity since an unincorporated association is not a corporation, a partnership, or an individual.

with the operation of a propane steam preparation table. In affirming the lower court's entry of judgment on the pleadings for defendants this Court reasoned that plaintiff, by virtue of her membership in the association and her voluntary assumption of a participating role in the operation of the table, was

> cooperatively engaged with those who were allegedly guilty of negligence [and therefore] became subject to the legal principle that where persons join in the prosecution of a common enterprise there is thereby created a mutual relationship of agency among them, with the result that the negligence of any of them is imputed to each and all of them. Since, therefore, the negligence of which she complains is legally imputed to herself, she cannot recover from the association or from any of its members, other than, ... the individuals who actually committed the tort which caused her injuries.

*DeVillars,* 363 Pa. at 500–01, 70 A.2d at 335.

It is apparent from the above language that the Court in *DeVillars* predicated its holding on an agency theory and not on the proposition that an unincorporated association has no existence separate and apart from its members.

The general common law rule is that an unincorporated association "is not an entity, and has no status distinct from the persons composing it, but is rather a body of individuals acting together for the prosecution of a common enterprise without a corporate charter but upon methods and forms used by corporations." 6 Am.Jur.2d Associations and Clubs § 1 (footnotes omitted). *See* P.L.E. Associations and Clubs § 1. However, it is inappropriate to apply this general proposition to all unincorporated associations.[10]

A volunteer fire department is more than a social club or a fraternal organization; it is an association organized for a definite purpose which has enjoyed a long and respected

10. Interestingly, the Pennsylvania Law Encyclopedia, which was relied upon by the Superior Court, did not intend its decision to include "particular kinds of associations or associations organized for a particular purpose." P.L.E. Associations and Clubs § 1.

history in our Commonwealth. Most recently, the Commonwealth Court in a comprehensive opinion outlined this history in *Zern v. Muldoon*, 101 Pa.Cmwlth. 258, 516 A.2d 799 (1986), *appeal dismissed*, 518 Pa. 75, 541 A.2d 314 (1988). The court, there confronted with a governmental immunity question, proceeded to define the legal relationship between volunteer fire companies and the local municipalities which they serve. In so doing, the court, based on both judicial and statutory authority, concluded that "the history, structure, organization and *public duty* of volunteer fire companies distinguish them as an entity from any other organization in existence in this Commonwealth today." [11] *Id.* at 270, 516 A.2d at 804 (emphasis in original). *See also Walsh v. Camelot Bristol Co.*, 102 Pa.Cmwlth. 76, 517 A.2d 577 (1986); *Wilson v. Dravosburg Volunteer Fire Department*, 101 Pa.Cmwlth. 284, 516 A.2d 100 (1986).

As further support for the proposition that volunteer fire associations are unique we note that the General Assembly has enacted various measures that have acknowledged the existence of volunteer fire companies as separate entities in this Commonwealth. This legislative recognition has surfaced in many areas. For instance, the Volunteer Firemen's Relief Association Act [12] was passed to encourage the formation of relief organizations that would afford financial protection to volunteer firefighters injured or killed as a result of their participation in their official duties. The funds generated by these organizations would be available for the protection of the firefighter and their heirs. Significantly, these funds could be used to secure insurance against the legal liability of the volunteer firefighter for claims of loss or expense arising from their authorized duties.[13] Moreover, a death benefit in the amount of $25,000 shall be paid out of the Commonwealth's General Fund

11. Although the court's discussion was limited to the narrow issue of immunity we believe it is relevant to the instant case.

12. Act of June 11, 1968, P.L. 149, § 1, *as amended* by Act of June 21, 1984, P.L. 427, No. 86, § 1, 53 P.S. § 8501 *et seq.*

13. Act of March 7, 1982, P.L. 168, No. 53, § 1, 53 P.S. § 8506(e)(12).

to the survivors of a volunteer firefighter killed in the performance of duty.[14]

In addition, the Volunteer Fire Company, Ambulance Service and Rescue Squad Assistance Act[15] was enacted to provide low interest loans to volunteer companies, available from a special fund known as the Volunteer Companies Loan Fund, to be used for purpose of establishing or modernizing their facilities and for purchasing new firefighting equipment.

In the area of taxation, volunteer fire companies are exempt from the liquid fuels tax[16] and the fuel use tax.[17] Further exemptions apply to vehicle title and registration fees,[18] as well as property tax assessments in counties of the fourth to eighth classes.[19] Registration requirements under the Charitable Organization Reform Act[20] are waived as to volunteer firefighting organizations.

The legislature has also provided that no volunteer fire company may be replaced with a paid fire company by a municipality unless a majority of voters have approved by referendum of the change.[21] Moreover, no employer may terminate an employee who is a volunteer firefighter and has lost time from his employment as a result of responding to a call in the line of duty.[22]

14. Act of June 26, 1976, P.L. 424, No. 101, § 1, *as amended* by Act of October 16, 1981, P.L. 295, No. 102, § 1, 53 P.S. § 891.

15. Act of July 15, 1976, P.L. 1036, No. 208, § 1, 72 P.S. § 3943.1 *et seq.*

16. Act of May 21, 1931, P.L. 149, § 1, *as amended* by Act of December 19, 1975, P.L. 556, No. 156, § 1, 72 P.S. § 2611d.

17. Act of January 14, 1952, P.L. (1951) 1965, § 1, *as amended* by Act of December 19, 1975, P.L. 558, No. 157, § 1, 72 P.S. § 2614.4.

18. Act of June 17, 1976, P.L. 162, No. 81, § 1, *as amended*, 75 Pa.C.S. § 1901.

19. Act of May 21, 1943, P.L. 571, art. II, § 202 *as amended* by Act of March 27, 1986, P.L. 69, No. 23, § 1, 72 P.S. § 5453.202(a)(14).

20. Act of April 30, 1986, P.L. 107, No. 36, § 1, *as amended* by Act of July 1, 1986, P.L. 298, No. 72, § 2, 10 P.S. § 161.7.

21. Act of June 13, 1955, P.L. 173, § 2, 53 P.S. § 3832.

22. Act of December 1, 1977, P.L. 249, No. 83, § 1, 43 P.S. § 1201.

Additionally, for purposes of workmen's compensation, volunteer firefighters are afforded employee status of the municipality and shall be entitled to receive compensation for injuries sustained while actively engaged in the duties of the fire company.[23] It is under this provision that appellee was covered by the Borough of New Galilee's compensation carrier, and received workmen's compensation benefits under this policy.

Finally, and perhaps most significantly, official immunity is conferred upon volunteer firefighters inasmuch as they are deemed public employees of a local agency.[24] *See also* 42 Pa.C.S. § 8332.3—Volunteer Firefighters Civil Immunity.[25] By virtue of this status, official immunity is expressly contingent upon their role as a volunteer firefighter within the Commonwealth. Along with this status these individuals enjoy all the attendant protections and limitations afforded public employees acting on behalf of a local government unit, namely indemnification;[26] damage limitations;[27] legal assistance;[28] and all available defenses.[29]

■ The above statutory enumeration demonstrates that volunteer fire associations are in reality quasi-governmental units, and the policy issued by S.R.I. was essentially a fleet policy issued to a government unit. This Court recently affirmed the prohibition against allowing a non-designated individual to stack uninsured motorist coverage under a fleet policy, *Miller v. Royal Insurance Company*, 354 Pa.Super. 20, 510 A.2d 1257 (1986), *aff'd per curiam*, 517 Pa. 306, 535 A.2d 1049 (1988); and this prohibition against fleet stacking has been applied where the policy holder was

23. Act of June 2, 1915, P.L. 736, art. VI, § 601, *as amended* by Act of July 11, 1980, P.L. 577, No. 121, § 1, 77 P.S. § 1031.

24. Act of October 5, 1980, P.L. 693, No. 142, § 221(*l*); 42 Pa.C.S. § 8501 *et seq.*

25. Act of December 15, 1986, P.L. 1598, No. 177, § 2.

26. Act of October 5, 1980, P.L. 693, No. 142, § 221(*l*); 42 Pa.C.S. § 8548.

27. *Id.*, 42 Pa.C.S. § 8549.

28. *Id.*, 42 Pa.C.S. § 8547.

29. *Id.*, 42 Pa.C.S. § 8546.

a governmental unit. *See Flamini v. General Accident Fire Life Assurance Corp.*, 328 Pa.Super. 406, 477 A.2d 508 (1984). We detect no compelling reason to distinguish the current situation from those situations.

Consequently, because the policy under which appellee sought coverage was a fleet policy with no explicit designation of insureds, appellee's entitlement to coverage was predicated on his occupation of a vehicle: a "class two" status. Thus, appellee did not enjoy a recognizable contractual relationship with S.R.I. and there was no basis upon which to allow him to stack the coverages applicable to the other vehicles. Therefore, his recovery under the S.R.I. policy is limited to the $30,000.00 coverage applicable to the vehicle he was occupying at the time of the accident, and the order of the Superior Court is reversed as to that issue.

We now must resolve appellant's second issue, to wit: whether S.R.I. should be permitted to reduce the uninsured motorist benefits by the amount of workmen's compensation benefits received by appellee. This issue arises by virtue of a contractual provision contained in the uninsured motorist endorsement which provided in relevant part:

E. OUR LIMIT OF LIABILITY

1. Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations.

2. Any amount payable under this insurance shall be reduced by:

a. All sums paid or payable under any workers' compensation, disability benefits or similar law ...

Concerning this issue the Superior Court correctly noted that the Uninsured Motorist Act[30] did not contain a provision under which "an insurer may have a dollar-for-dollar set-off of no-fault coverage against benefits received from other sources." The court therefore refused to enforce an

30. See footnote 2 *supra* at 1383.

insurance contract provision not authorized by the statute. *Selected Risks,* at 40, 525 A.2d at 413.

It should be noted at the outset that there is no claim of ambiguity here: the contractual language is clear. The issue is simply whether the contractual provision in question is void as being contrary to public policy. This issue has been addressed in a number of jurisdictions, and the overwhelming majority of these jurisdictions have held that such a policy provision is invalid. *See e.g. State Farm Mutual Automobile Insurance Company v. Cahoon,* 287 Ala. 462, 252 So.2d 619 (1971); *State Farm Mutual Automobile Insurance Company v. Karasek,* 22 Ariz.App. 87, 523 P.2d 1324 (1974); *Travelers v. National Farmers Union Property and Casualty Company,* 252 Ark. 624, 480 S.W.2d 585 (1972); *Nationwide Mutual Insurance Company v. Hillyer,* 32 Colo.App. 163, 509 P.2d 810 (1973); *Jeanes v. Nationwide Insurance Company,* 532 A.2d 595 (Del.Ch. 1987); *Leist v. Auto Owners Insurance Company,* 160 Ind.App. 322, 311 N.E.2d 828 (1974); *Cano v. Travelers Insurance Company,* 656 S.W.2d 266 (Mo.1983); *Bartlett v. Nationwide Mutual Insurance Company,* 33 Ohio St.2d 50, 294 N.E.2d 665 (1973); *Chambers v. Walker,* 653 P.2d 931 (Okla.1982); *Peterson v. State Farm Mutual Automobile Insurance Company,* 238 Or. 106, 393 P.2d 651 (1964); *Aldcroft v. Fidelity and Casualty Co.,* 106 R.I. 311, 259 A.2d 408 (1969); *Thamert v. Continental Casualty Company,* 621 P.2d 702 (Utah 1980).

The rationale of these courts is varied but certain common themes emerge: first, uninsured motorist coverage is paid for by a separate premium, and to give the uninsured motorist carrier a set-off based on the fortuitous existence of a collateral source would result in a windfall to the carrier; second, uninsured motorist coverage is mandated by statute and any variations from that statutory mandate should come from the legislature; third, workmen's compensation only covers a fraction of what tort damages would cover, (e.g. workmen's compensation does not provide 100% of wage loss coverage, nor pain and suffering, nor

other consequential damages) and a dollar-for-dollar set-off does not recognize this reality; and fourth, there is no public policy against an individual purchasing additional uninsured motorist coverage to protect himself and his family against the shortfall which could result from a dependency on workmen's compensation benefits.

We think that all of these reasons are sound and on these alone we are inclined to void this provision. However, there is a more compelling reason. In the new Motor Vehicle Financial Responsibility Law,[31] which contains the current Uninsured Motorist Law, the General Assembly has spoken clearly on this issue. In section 1735 the law provides:

> The coverages required by this subchapter *shall not* be made subject to an exclusion or reduction in amount because of any worker's compensation benefits payable as a result of the same injury.

75 Pa.C.S. § 1735 (emphasis added). Although this act took effect after the incident here at issue, and therefore is not controlling as a statute, it is certainly a persuasive statement of what the legislature perceives as the appropriate public policy in dealing with such set-offs. Therefore, we have no hesitation in striking this provision as void.

Accordingly, the order of the Superior Court is reversed in part and affirmed in part. The matter is remanded to the Court of Common Pleas of Allegheny County for the entry of judgment consistent with this opinion.

NIX, C.J., did not participate in the consideration or decision of this case.

PAPADAKOS, J., files a concurring and dissenting opinion in which LARSEN, J., joins.

PAPADAKOS, Justice, concurring and dissenting.

I agree with the majority that uninsured motorist benefits cannot be reduced by the amount of worker's compensation benefits received by the Appellee, but I must express

31. Act of February 12, 1984, P.L. 26, No. 11, § 3, 75 Pa.C.S. § 1735.

my disapproval with the majority's analysis and conclusions with regard to the stacking of insurance policies taken out by a volunteer fire association for the benefit of its members.

While volunteer fire associations have been endowed with various aspects of quasi-governmental immunities and protections because of the important *public* nature of the services which they provide, I cannot conclude that these volunteer fire associations have been completely metamorphosed into governmental entities or that they have lost their fundamental character as voluntary unincorporated associations.

The fact still remains that volunteers from various communities, out of their sense of public duty, join their efforts and organize fire companies to protect their homes and the homes and property of their kin, neighbors, and fellow citizens. This volunteer effort is undertaken mainly because municipal government is unable to underwrite the costs of such a paid service and government owes a great debt of gratitude to these citizens who have given so much of their time, efforts and blood in the cause of protecting us all.

Under such circumstances, it is not at all unusual that various statutes should have been enacted which have clothed these associations with various protections and immunities for this is the very least that should have been done to lighten the burden placed on these volunteers for their public service.

Whatever type of entity a firefighters association may be styled, it still has no existence separate and apart from that of its members. If the members pledge themselves to the purchase of real estate and secure the purchase with a mortgage, the individual members are *personally* responsible to see to it that the debt is satisfied. *Wortex Mills v. Textile Workers U. of A,* 380 Pa. 3, 109 A.2d 815 (1954); *Bloom v. Vauclain,* 329 Pa. 460, 198 A. 78 (1938). They cannot look to their municipal or state government for help.

Similarly, if the individual members seek to protect themselves by obtaining insurance under their association name, that does not change the fact that the insurance is intended to cover the members of the association. Appellee was seriously injured while serving in his capacity as a volunteer firefighter. He and his fellow volunteer firefighters sought to protect themselves against injuries by purchasing a comprehensive policy of insurance. To suggest that the policy was intended for anyone else but the individual members is sophistry.

Unfortunately, the majority, while extending plaudits to firefighters for all their service to the community, in reality offers only empty praise and seizes upon the opportunity to deprive Appellee of the full measure of his damages. Under the majority's analysis, the association itself would be the Class One insured, but the association never drives the fire trucks and is not the responsible party in case of a law suit—the firefighters are, acting as agents of the municipality. 75 Pa.C.S. § 1756. See also, *Brinker v. City of Greensburg*, 409 Pa. 110, 185 A.2d 593 (1962). This is precisely why the legislature has extended to these individuals the various immunities and limitations to which the majority alludes. See 42 Pa.C.S. §§ 8332.3, 8501. Purchasing insurance coverage by using the association name is merely a convenient method by which the individual members seek to protect themselves. Since the firefighters themselves pay the premiums with their association funds, and since the firefighters are the association, it is entirely consistent that the members are the named or designated insureds under this policy.

Stacking is appropriate here because as we held in *Utica Mutual Insurance Co. v. Contrisciani*, 504 Pa. 328, 473 A.2d 1005 (1984), a person has a reasonable expectation that when he pays separate premiums that he has obtained coverage under separate policies and therefore is entitled to benefits under each. Here, all the members maintain a joint association account from which their funds are disbursed, in this case for insurance coverage. As in *Utica,*

Appellee had a reasonable expectation that his premium contributions covered all six *vehicles* owned by the Association and that he would be covered if he was injured driving any of these vehicles and, therefore, that he would be entitled to benefits under each policy.

I would hold that the Appellee is a class one insured and would affirm the opinion and order of the Superior Court.

LARSEN, J., joins this Concurring and Dissenting Opinion.