**Gene C. BAKER, Plaintiff,**

v.

**CONTINENTAL WESTERN INSURANCE COMPANY, Defendant.**

**No. CIV. 90–5063.**

United States District Court, D. South Dakota, W.D.

Oct. 5, 1990.

Ronald E. Brodowicz, Rapid City, S.D., for plaintiff.

G. Verne Goodsell, Gunderson, Palmer, Goodsell & Nelson, Rapid City, S.D., for defendant.

### MEMORANDUM OPINION AND ORDER

BATTEY, District Judge.

This case arises from an automobile collision involving the plaintiff, Gene C. Baker (Baker) and an uninsured motorist, Christopher L. Ball (Ball). The plaintiff had stopped for traffic on Mt. Rushmore Road

in Rapid City, South Dakota, when he was struck from behind by Ball. Ball stated to the officer at the scene that he was going too fast to stop and the officer issued a citation and summons to Ball for driving at an excessive rate of speed. A plea of guilty was entered on the summons at the Pennington County Courthouse.

Baker subsequently filed a claim with his insurer, defendant Continental Western Insurance Company (Continental Western), to recover for personal injuries under the uninsured motorist provision of the plaintiff's policy. Continental Western denied the claim and Baker commenced this action for the coverage claimed under the uninsured motorist provision of his insurance policy and for damages. The defendant has moved to dismiss the action on the grounds that this Court lacks subject matter jurisdiction to hear the plaintiff's direct claim against his insurer unless the plaintiff first obtains a judgment of liability in separate proceedings against the tortfeasor Ball.

For reasons set forth below, this Court does not accept the defendant's arguments, and therefore denies the defendant's motion to dismiss. Accordingly, jurisdiction over this action is properly vested in this Court by reason that the requirements of 28 U.S.C. § 1332 regarding jurisdictional amount and diversity of citizenship are satisfied.

The United States Supreme Court has instructed district courts hearing diversity cases that "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).[1] The *Erie* Court noted that in a diversity context, the "law of the state" includes not only state statutes, but also the corpus of interpretive law as pronounced by the state courts. *Erie*, 304 U.S. at 78, 58 S.Ct. at 817.

■ The question presented by the defendant's motion of whether a judgment of liability against a third-party tortfeasor is a precondition to a direct suit for uninsured motorist benefits against an insurance carrier is one of first impression for this jurisdiction. The Supreme Court of South Dakota in *Helmbolt v. LeMars Mut. Ins. Co.*, 404 N.W.2d 55 (S.D.1987), had an opportunity to rule on an issue related to the one presented in this case. *Helmbolt* involved a bad faith claim against LeMars Mutual Insurance Company for failure to pay under the terms of an underinsured motorist provision of its policy. As discussed below, *Helmbolt* is distinguishable from the case now before the Court and therefore does not provide this Court with clear controlling precedent on the question presented.

In the absence of a definitive expression of state law on any matter which comes before a district court, it is the duty of the court to conscientiously apply state law as the court believes it would be applied in the state courts in order that the court may "make its own determination of what the Supreme Court of [the State] would probably rule in a similar case." *King v. Order of United Commercial Travelers*, 333 U.S. 153, 161, 68 S.Ct. 488, 492, 92 L.Ed. 608 (1948); Wright & Miller, *Federal Practice and Procedure* § 4507 (1982). Thus, even though the South Dakota Supreme Court's decision in *Helmbolt* is not an unequivocal statement of state law on the issue raised by the defendant's motion to dismiss, this Court will nonetheless endeavor to follow the guidance provided by that decision in interpreting the South Dakota uninsured motorist statute as this Court conscientiously believes this dispute would be resolved by the South Dakota Supreme Court. *King*, 333 U.S. at 161, 68 S.Ct. at 492.

The South Dakota statute on uninsured motorist coverage provides in relevant part as follows:

1. The doctrine of federal judicial deference to state substantive law announced in *Erie Railroad* has found expression in 28 U.S.C. § 1652, which revises Section 34 of the Judiciary Act of 1789 and provides that "[t]he laws of the several states, except where the Constitution of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."

*Motor Vehicle Insurance—Uninsured Motorist Coverage.* No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto in limits for bodily injury or death set forth in § 32–35–70, or if requested by the insured in limits not exceeding the coverage provided by such policy for bodily injury and death, for the protection of persons insured thereunder who are *legally entitled to recover* damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.

SDCL 58–11–9 (emphasis added).[2]

Of historical note, uninsured motorist coverage was first offered in the State of New York during the mid–1950s and other jurisdictions soon followed. The uninsured motorist statute was designed to fill the void left by statutorily mandated liability coverage by providing additional coverage to an insured injured by a tortfeasor who is uninsured, underinsured, or a hit-and-run driver. *See* Couch, *Cyclopedia of Insurance Law,* § 45:620 (2d ed. 1981). Thus,

the purpose of uninsured motorist protection is to provide compensation to an insured who is the victim of an uninsured motorist's negligence to the same extent as if the uninsured motorist were properly insured. *Radlein v. Industrial Fire & Casualty Ins. Co.,* 117 Wis.2d 605, 345 N.W.2d 874, 884 (1984); *State Farm Mut. Auto. Ins. Co. v. Baldwin,* 764 F.2d 773, 778 (11th Cir.1985).

The South Dakota uninsured motorist statute is substantially identical in form and intent to the model statute enacted by nearly every legislature across the nation. *See Higgins v. Nationwide Mut. Ins. Co.,* 282 So.2d 301, 303 (Ala.1973); *Radlein,* 345 N.W.2d at 884; *Booth v. Fireman's Fund Ins. Co.,* 218 So.2d 580, 582, 28 A.L.R.3d 573, 577 (La.1968); *Lane v. State Farm Mut. Auto. Ins. Co.,* 209 Neb. 396, 308 N.W.2d 503, 509 (1981). South Dakota's uninsured motorist statute should thus be viewed in the context of a nationwide public policy of expanding the coverage provided by insurance carriers. To effectuate coverage for victims of financially irresponsible motorists thus left with no remedy under the singular scheme of mandatory liability insurance, the South Dakota legislature elected to provide for a dual system of insurance coverage and "[i]t is for this reason that the legislature made uninsured motorist coverage mandatory in every automobile policy issued in this state." *Baldwin,* 764 F.2d at 773.[3]

---

2. The South Dakota uninsured motorist provision was enacted in 1966 (SL 1966, ch. 111, ch. 22, § 16(5)) and the underinsured motorist provision followed nine years later (SL 1975, ch. 315, § 3). The intent of both statutes is to remedy a deficiency in coverage carried by a tortfeasor. Uninsured motorist coverage compensates an insured for injuries sustained through the acts of a motorist operating a vehicle without any insurance whatsoever. Underinsured motorist coverage provides an insured with compensation where the policy limits of an insured tortfeasor's policy are insufficient to fully compensate the victim for the loss sustained.

3. In 11 Am.Jur. *Trials* § 6, p. 86, it is stated:

[w]here a statute [an Act] requiring uninsured motorist coverage is broad and comprehensive in scope, it establishes as a matter of public policy that every bodily injury motor vehicle policy should provide uninsured motorist coverage; the [Act] becomes in effect a part of every policy of insurance to which it is applicable, as if it were written out in full in the policy itself.

While the public scheme of mandatory liability and uninsured motorist coverage serves the purpose of providing compensation for personal injuries sustained as a result of the negligent operation of an automobile, uninsured motorist coverage is separate and distinctly different from liability insurance. While liability coverage seeks to protect an insured against liability *to* a third party which the insured may incur through the operation of an automobile, uninsured motorist insurance compensates an insured for personal injuries resulting *from* the actions of a third party. In other words, mandatory liability coverage provides an insured protection while uninsured motorist coverage provides compensation. *Reese v. State Farm*

■ An action by an insured against an insurance carrier pursuant to an uninsured motorist provision is an action on the policy and is therefore *ex contractu.* *Cf. Helmbolt,* 404 N.W.2d at 57.[4] Uninsured motorist coverage thus constitutes an insurance carrier's direct promise to indemnify an insured for a specific loss and is therefore a first-party benefit, as distinguished from a promise to an insured to pay a third party. Couch at § 45:624. The policy issued by the defendant Continental Western to plaintiff Baker is thus an agreement to indemnify Baker for the injuries caused by the tortfeasor Ball, and Baker's right of recovery is ultimately based upon the policy. Baker's policy provides, in relevant part:

PART C—UNINSURED MOTORISTS COVERAGE INSURING AGREEMENT

A. We will pay damages which an "insured" is *legally entitled to recover* from the owner or operator of an "uninsured motor vehicle" because of "bodily injury:"

1. sustained by an insured; and,
2. caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

(Emphasis added). Neither the South Dakota uninsured motorist statute nor the policy impose on Continental Western an absolute liability to compensate the insured. Couch at § 45:624. The Baker policy provision essentially mirrors the requirements for uninsured motorist coverage as set forth in SDCL 58–11–9 in that to collect compensation an insured must be able to show (1) legal entitlement to recover (2) for bodily injuries (3) sustained through the ownership or operation of a motor vehicle by an uninsured motorist. Because it is uncontested that the plaintiff sustained bodily injuries as a result of the operation of a motor vehicle by an uninsured motorist, it is the meaning of the phrase "legally entitled to recover," appearing in both the statute and the policy, upon which this entire action turns. In the motion to dismiss Continental Western asks this Court to construe the phrase "legally entitled to recover" to require a separate trial on the issue of negligence between Baker and Ball, and a resulting judgment of Ball's liability, before binding the insurer to provide the compensation due under the policy. The merits of this argument are best characterized by Professor Widiss, who stated in *A Guide to Uninsured Motorist Coverage* § 716 (1969), that:

"[a]lthough it would seem a matter that should be beyond dispute under both the terms of the endorsement and in light of the historical developments leading up to [uninsured motorist] coverage, the right of the insured to sue his own insurer without first bringing an action against the uninsured motorist continues to be raised as an issue ... [even though the] ... reported opinions of the courts almost uniformly support the right of an insured to proceed directly against the insurance company.

Professor Widiss notes that the majority of states reject the argument that a claimant must first secure a determination of fault and damages against the uninsured motorist before bringing a direct action against the insured's carrier. As previously mentioned, this is a question for which no clear controlling precedent exists in this jurisdic-

*Mut. Auto. Ins. Co.,* 285 Md. 548, 403 A.2d 1229, 1231 (1979); *Pickering v. American Employers Ins. Co.,* 282 A.2d 584, 587 (R.I.1971).

4. Numerous jurisdictions have adopted the view that an action by an insured against an insurance carrier arising out of an uninsured motorist provision of an insurance policy is one which sounds in contract and is therefore governed by the principles of law applicable to suits for breach of contract. *Higgins v. Nationwide Mut. Ins. Co.,* 291 Ala. 462, 282 So.2d 301 (1973); *Transnational Ins. Co. v. Simmons,* 19 Ariz.App. 354, 507 P.2d 693 (1973); *Hartford Accident & Indem. Co. v. Mason,* 210 So.2d 474 (Fla.App. 1968); *Booth v. Fireman's Fund Ins. Co.,* 253 La. 521, 218 So.2d 580 (1969); *Franco v. Allstate Ins. Co.,* 496 S.W.2d 150 (Tex.Civ.App.1973); *Sahloff v. Western Casualty & Sur. Co.,* 45 Wis.2d 60, 171 N.W.2d 914 (1969).

tion.[5]

The defendant urges this Court to accept the minority view as the law of this jurisdiction, citing as authority for that position cases from two states that follow the majority view. *Radlein v. Industrial Fire & Casualty Ins. Co.*, 117 Wis.2d 605, 345 N.W.2d 874 (1984); *Crossley v. Pacific Employers Ins. Co.*, 198 Neb. 26, 251 N.W.2d 383 (1977). Neither of these two cases are persuasive authority for the position the defendant would have this Court adopt. The Supreme Court of Wisconsin in *Radlein* did nothing more than state the majority view that a judgment of liability is not a pre-condition of recovery. There is certainly no authority in *Radlein* for any argument which would divest this Court of jurisdiction of the plaintiff's claim. *Crossley* is equally unhelpful for the defendant's motion by reason that the Supreme Court of Nebraska, in *Lane v. State Farm Mut. Auto. Ins. Co.*, 209 Neb. 396, 308 N.W.2d 503 (1981), unequivocally adopted the majority view and effectively repudiated *Crossley* as a statement of Nebraska uninsured motorist law.

Though this jurisdiction has not yet explicitly done so, it appears poised to adopt the majority view on this narrow question of law. In *Helmbolt* the South Dakota Supreme Court addressed the related question of whether a judgment of liability is a prerequisite to an insurance carrier's good faith duty to settle an underinsured motorist claim. At issue in *Helmbolt* was the general intent of South Dakota's underinsured motorist statute at SDCL 58–11–9.6 and not the meaning of the phrase "legally entitled to recover" located in the uninsured motorist statute at SDCL 58–11–9. The plaintiff in *Helmbolt* brought a bad faith suit against an insurer that refused to participate in settlement negotiations concerning an underinsured motorist claim unless the plaintiff first obtained a judgment of liability against the tortfeasor, despite an admission of liability by the tortfeasor. The Supreme Court held that it was bad faith for the insurance carrier to demand a judgment and refuse to settle. Stated another way, the Court found that the good faith requirement inherent in all insurance contracts obligates an insurance carrier to attempt to negotiate a settlement of an underinsured motorist claim, even in the absence of a judicial determination of liability. *Helmbolt*, 404 N.W.2d at 59.

This Court finds the majority rule, as promulgated by numerous state court opinions, to be the most persuasive and reasoned view of the proper balance of responsibilities between insurer and insured under the scheme of uninsured motorist coverage. This Court further believes that a logical extension of the Supreme Court's

**5.** Without intending to be exhaustive of the jurisdictions which have adopted the majority rule, following is a list of cases supporting the view that suit against an uninsured motorist is not a condition precedent to recovery from the victim's insurance carrier: *Everaard v. Hartford Accident & Indem. Co.*, 842 F.2d 1186 (10th Cir.1988); *State Farm Mut. Auto. Ins. Co. v. Baldwin*, 764 F.2d 773 (11th Cir.1985); *State Farm Mut. Auto. Ins. Co. v. Griffin*, 51 Ala.App. 426, 286 So.2d 302 (1973); *Home Ins. Co. v. Williams*, 252 Ark. 1012, 482 S.W.2d 626 (1972); *Allied Fidelity Ins. Co. v. Lamb*, 361 N.E.2d 174 (Ind.App./Dist.1977); *Winner v. Ratzlaff*, 211 Kan. 59, 505 P.2d 606 (1973); *Puckett v. Liberty Mut. Ins. Co.*, 477 S.W.2d 811 (Ky.1971); *Booth v. Fireman's Fund Ins. Co.*, 253 La. 521, 218 So.2d 580 (1969); *Preferred Risk Mut. Ins. Co. v. Poole*, 411 F.Supp. 429 (D.N.Miss.1976); *Byrn v. American Universal Ins. Co.*, 548 S.W.2d 186 (Mo.App.1977); *Lane v. State Farm Mut. Auto. Ins. Co.*, 209 Neb. 396, 308 N.W.2d 503 (1981); *Lee v. Allstate Ins. Co.*, 648 F.Supp. 1295 (D.Nev. 1986); *Deluca v. Motor Vehicle Accident Indem. Corp.*, 17 N.Y.2d 76, 268 N.Y.S.2d 289, 215 N.E.2d 482 (1966); *Wheeless v. St. Paul Fire & Marine Ins. Co.*, 11 N.C.App. 348, 181 S.E.2d 144 (1971); *Sumwalt v. Allstate Ins. Co.*, 12 Ohio St.3d 294, 466 N.E.2d 544 (1984); *Associated Indem. Corp. v. Cannon*, 536 P.2d 920 (Okla. 1975); *Grayson v. National Fire Ins. Co.*, 313 F.Supp. 1002 (D.P.R.1970); *Hightower v. Members Mut. Ins. Co.*, 494 S.W.2d 285 (Tex.Civ.App. 1973); *Radlein v. Industrial Fire & Casualty Ins. Co.*, 117 Wis.2d 605, 345 N.W.2d 874 (1984).

In reasoning which, in the view of Professor Widiss, "represents a tortured interpretation of the applicable statute and endorsement provisions," Tennessee is the latest to join the list of only four jurisdictions which have adopted the contrary view: *Continental Ins. Co. v. Echols*, 145 Ga.App. 112, 243 S.E.2d 88 (1978); *Park v. Safeco Ins. Co. of Am.*, 251 S.C. 410, 162 S.E.2d 709 (1968); *Glover v. Tennessee Farmers Mut. Ins. Co.*, Tenn., 225 Tenn. 306, 468 S.W.2d 727 (1971); *O'Brien v. Government Employees Ins. Co.*, 372 F.2d 335 (3d Cir.1967). Widiss at 320 (1980 Supp.).

interpretation of SDCL 58–11–9.6 in *Helmbolt* to the facts of this case results in the application of that rule to this jurisdiction.

Following the line of inquiry employed by the Supreme Court in *Helmbolt*, the Court first looks to the statute for guidance as to the legislature's intent in including the "legally entitled to recover" element in the South Dakota uninsured motorist statute. Bearing in mind that uninsured motorist coverage is designed for the benefit of insureds and not insurers, this inquiry is approached from the premise that it was the legislature's intent to increase, rather than decrease, the protection available to South Dakota motorists through the enactment of the uninsured motorist statute. Couch at § 45:624; *Helmbolt*, 404 N.W.2d at 59. Looking to the statute, there is no requirement contained therein that an insured must reduce a claim against a tortfeasor to judgment prior to payment of uninsured motorist benefits. As the Court stated in *Helmbolt*, "[i]n interpreting legislation, this court cannot add language that simply is not there." *Helmbolt*, 404 N.W.2d at 59 (*citing, Petition of Famous Brands, Inc.*, 347 N.W.2d 882 (S.D.1984); *Boehrs v. Dewey County*, 48 N.W.2d 831 (S.D.1951)).

To adopt the contrary view would be to relegate the modern coverage provided by statute to the antiquated status of uninsured judgment insurance, the precursor to uninsured motorist insurance.[6] South Dakota's current statute was enacted, in part, precisely for the purpose of eliminating the condition precedent of a judgment of liability attendant to unsatisfied judgment insurance so as to increase the protection available to motorists. *Helmbolt*, 404 N.W.2d at 59.

Other policy considerations urge adoption of the majority view in this jurisdiction. In disallowing the requirement that an insured secure a judgment of liability prior to an insurer's duty to endeavor to settle a claim, the Supreme Court expressed a concern with "congesting the court system" with duplicitous litigation. *Helmbolt*, 404 N.W.2d at 59. Adoption of the minority view virtually assures that multiple litigation will ensue as insureds sue both the tortfeasor and their insurers. Along this line, it is interesting to note the clause contained in Baker's policy of insurance which provides that any prior judgment against an uninsured which Baker might obtain would not be binding upon Continental Western without the company's prior consent. The policy provides neither an assurance that the carrier will consent nor standards by which an insured may determine whether consent denied should be rightfully given. Thus, the Continental policy not only encourages multiple litigation, but encourages litigation which might ultimately be futile unless the insured obtains the consent of the insurer to pursue a lawsuit. Clearly such tedious procedures are absurd in the extreme and "an insurance policy must be subject to a reasonable interpretation and not one which amounts to an absurdity." *Helmbolt*, 404 N.W.2d at 60.

Having determined that the phrase "legally entitled to recover" does not mean that an insured must obtain a judgment against an uninsured prior to proceeding directly against an insurer, it remains for this Court to give construction to the term. Having noted that uninsured motorist protection was enacted for the benefit of the innocent victim of an uninsured motorist's negligence, the phrase should be liberally

---

**6.** The origin of uninsured motorist coverage is explained in Widiss at § 1.9, as follows:

The antecedent of the uninsured motorist endorsement can be found in the unsatisfied judgment insurance first offered in about 1925 by the Utilities Indemnity Exchange. This insurance provided indemnification when the insured showed both (1) that he had reduced a claim to judgement and (2) that he was unable to collect the judgement from the negligent party. Such insurance was available from several companies during the years from 1925 until 1956. When the uninsured motorist coverage became generally available, the unsatisfied judgment insurance was abandoned. It should be noted that the uninsured motorist endorsement—as proposed and subsequently issued—differed significantly from its predecessor in that it eliminated the requirement that the insured obtain a judgment against the uninsured motorist prior to recovering under his policy.

construed in order to provide that protection. *Lane,* 308 N.W.2d at 508; *Winner v. Ratzlaff,* 211 Kan. 59, 505 P.2d 606, 610 (1973).

Upon consideration of the relevant authority from this and other jurisdictions, and the pertinent public policy arguments, it is the determination of this Court that the words "legally entitled to recover" mean simply that an insured must be able to establish fault on the part of the uninsured motorist which gives rise to damages, and to prove the extent of those damages. *Ratzlaff,* 505 P.2d at 610; *Sumwalt,* n. 4, 466 N.E.2d at 546; *Griffin,* n. 4, 286 So.2d at 306. This formulation of legal entitlement leaves an insured with a claim against an uninsured motorist with essentially three options for proceeding on the claim. Those options, as outlined in the widely quoted opinion of the Kansas Supreme Court in *Ratzlaff,* are as follows:

> [h]e may file an action directly against his uninsured motorist liability carrier without joining the uninsured motorist as a party defendant; he may file an action joining both the insurer and the uninsured motorist as party defendants; or, he may file an action against the uninsured motorist alone without joining the insurer as a party defendant. In each of these options he may litigate all of the issues of liability and damages.

The defendant insurer may interpose as defenses to a claim under uninsured motorist coverage the non-negligence of the uninsured, contributory negligence of the insured, and the non-existence of damages.[7]

This formulation gives effectuation to both the contract of insurance that necessarily exists between an insurer and an insured, and to the underlying legislative policy of mandatory uninsured motorist coverage. This Court does no more than recognize that an insured, pursuant to statute, automatically obtains uninsured motorist coverage as part of the insurance contract, and that by fulfilling the obligation under the contract of paying an appropri-

ate premium, the insured should receive the coverage thus bargained for. Accordingly, an insured ought to be able to expect that the insurer will not subsequently attempt to dodge the duty imposed by the contract, or create unnecessary and unwarranted impediments to the insured's right of recovery. It is therefore:

ORDERED that the defendant's motion to dismiss pursuant to Rule 12(b) and Rule 19 of the Federal Rules of Civil Procedure is DENIED.

IT IS FURTHER ORDERED that the defendant's request for a trial by jury is GRANTED.

---

7. *See,* Couch at § 45:644 (*citing, McRory v. Allstate Ins. Co.,* 194 So.2d 759 (La.App.1967); *State Farm Mutual Auto Ins. Co. v. Fass,* 243 So.2d 223 (Fla.App.1971); *Gordon v. Phoenix Ins. Co.,* 242 So.2d 485 (Fla.App.1970)).