**Edel ISAAC, Plaintiff and Appellee,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant and Appellant.**

Nos. 18389, 18396.

Supreme Court of South Dakota.

Argued May 25, 1994.

Decided Sept. 14, 1994.

Edward C. Carpenter and William A. May of Costello, Porter, Hill, Heisterkamp and Bushnell, Rapid City, for plaintiff and appellee.

Curt Ireland, Suzanne M. Feist, Rapid City, Henry A. Harmon of Grefe and Sidney, Des Moines, IA, for defendant and appellant.

SABERS, Justice.

Following a jury trial in which the trial court instructed the jury as a matter of law that the worker's compensation set-off provision was void as against public policy, jury awarded Insured damages in the amount of $445,000—$100,000 under the policy, $325,000 for bad faith, and $20,000 punitive. Insurer appeals. Insured cross-appeals. We affirm in part and reverse in part.

### FACTS

On December 11, 1986, Edel Isaac (Isaac) purchased insurance from State Farm Mutual Automobile Insurance Company (State Farm) on a 1981 Dodge Omni. The policy provided for bodily injury liability coverage in the amounts of $100,000 per per-

son/$300,000 per accident. It also provided uninsured motor vehicle (UIM) coverage in identical amounts as required under SDCL 58–11–9.

On March 12, 1987, Isaac was rear-ended by a vehicle being driven by Lisa Bordeaux (Bordeaux). Isaac was employed by the State of South Dakota as a social worker. She was operating her vehicle in the course of her employment at the time of the accident. She called State Farm the following day to report the accident and on March 17, 1987, she signed an Automobile Claim Report indicating that she suffered a neck sprain. Although Isaac repeatedly informed State Farm that she did not think Bordeaux had insurance coverage, State Farm advised Isaac that the accident was Bordeaux's responsibility and that Isaac was not covered for this accident. State Farm failed to inform Isaac that she had uninsured motorist coverage.

Isaac filed a claim for worker's compensation which included reimbursement for her medical expenses. She began medical treatment for her neck injuries on May 19, 1987. On May 1, 1990, she was evaluated as having a 20% permanent disability of the whole person as a result of the accident.

In June, 1988, Isaac mentioned the accident to an attorney, Jackie Rasmussen, whom Isaac was consulting on a separate matter. Rasmussen contacted the State Farm claim office but does not recall what information she received. In approximately December, 1989, Isaac discussed the accident with another attorney, Mike Williams (Williams). Williams contacted the State Farm claims office on March 9, 1990 and spoke with Karla Ryno (Ryno), a claims specialist for State Farm. According to Williams, Ryno advised him that State Farm Claims Superintendent Ronald Seim (Seim) could accept service of process.

On March 12, 1990, a Summons was served by Isaac on Bordeaux and State Farm, through Seim. Seim assigned the claim to Ryno. Williams and Ryno met on April 26, 1990. Williams provided Ryno with a copy of the Automobile Claim Report signed by Isaac and a packet of medical reports. Ryno advised Williams that Isaac had no uninsured

motorist coverage because she had received worker's compensation benefits.

On September 18, 1990, Attorney Ray DeGeest (DeGeest) advised State Farm that he was appearing for Isaac in place of Williams, who had moved. DeGeest provided State Farm with all medical information relating to the accident and a breakdown of the $37,-533.94 in worker's compensation benefits received by Isaac as of that time. On October 19, 1990, Ryno advised DeGeest that there was absolutely no uninsured motorist coverage available to Isaac because she had received worker's compensation benefits. DeGeest sent a letter to State Farm demanding payment of the policy limits on October 25, 1990.

Isaac filed a Complaint on October 29, 1990 for damages in excess of $100,000. Bordeaux and State Farm filed Motions to Dismiss Isaac's claim for uninsured benefits, arguing that the action was barred by the three-year statute of limitations. Their motions were granted. Isaac appealed on the basis that the uninsured motor vehicle policy was a contract as opposed to a tort action and therefore governed by a six-year statute of limitations. State Farm conceded and stipulated to a dismissal of the appeal and a remand of the action to circuit court.

DeGeest again demanded payment of the policy limits on March 28, 1991 and May 29, 1991. As of this time, State Farm had made no offer of settlement on Isaac's claim despite three demands for payment of the policy limit. Issac filed an Amended Complaint June 17, 1991 alleging bad faith.

By letter dated November 1, 1991, State Farm offered to settle all claims for the sum of $100,000. State Farm's offer, however, was conditioned upon dismissal of Isaac's bad faith claim. Isaac offered to settle only the UIM claim for $100,000, leaving open the bad faith claim. State Farm continued to demand that all of Isaac's claims be dismissed in exchange for the payment of $100,000.

A jury trial commenced on March 29, 1993. On April 8, 1993, the jury rendered a verdict awarding Isaac damages of $445,000, $100,-000 under the policy, $325,000 for bad faith and $20,000 punitive. Following a separate

hearing, Isaac was awarded $94,789.60 attorney's fees, $30,000 prejudgment interest, and $16,542.70 costs. State Farm appealed. Isaac filed a Notice of Review.

## ISSUES

1. **Whether the trial court erred in ruling that the worker's compensation set-off provision in the Uninsured Motor Vehicle section of State Farm's policy was void as a matter of law.**

 Construction of a written contract is a question of law. *Dirks v. Sioux Valley Empire Elec. Ass'n*, 450 N.W.2d 426, 427–28 (S.D.1990). The provisions of the uninsured motorist statutes are construed liberally in favor of coverage. *Clark v. Regent Ins. Co*, 270 N.W.2d 26, 29 (S.D.1978).

 Prior to trial, State Farm requested that the trial court rule on the validity of the worker's compensation set-off provision in the Uninsured Motor Vehicle section of State Farm's policy. Following a hearing, the trial court ruled that the set-off provision was void and unenforceable as against public policy. State Farm argues that this was error. The policy provided in part:

**Limits of Liability**

**Coverage U**

2. Any amount payable under this coverage shall be reduced by any amount paid or payable to or for the *insured:*

c. under any worker's compensation, disability benefits, or similar law.

**When Coverage U and W Do Not Apply**

THERE IS NO COVERAGE:

3. TO THE EXTENT IT BENEFITS: a. ANY WORKER'S COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY.

This court recently addressed the legality of UIM set-off provisions for worker's compensation benefits in *National Farmers Union Property & Cas. Co. v. Bang,* 516 N.W.2d 313 (S.D.1994). *National Farmers* held that "a policy provision purporting to reduce UIM benefits paid by worker's compensation is void as a matter of public policy." *Id.* at 320–21. The National Farmers' policy language at issue provided:

Uninsured Motorists Coverage shall not apply to the benefit of any insurer or self-insurer under any worker's compensation or disability benefits law or any similar law.... Any amounts payable will be reduced by: (1) A payment made by the owner or operator of the uninsured motor vehicle or organization which may be legally liable. (2) A payment under the Liability Coverage of this policy. (3) A payment made or amount payable because of the bodily injury under any worker's compensation law or disability benefits law or similar law.

In support of our holding in *National Farmers*, we cited to the Pennsylvania Supreme Court decision of Selected *Risks Ins. v. Thompson*, 520 Pa. 130, 552 A.2d 1382 (1989). According to *Selected Risks*:

The rational[e] of these courts is varied but certain common themes emerge, first, uninsured motorist coverage is paid for by a separate premium, and to give the uninsured motorist carrier a set-off based on the fortuitous existence of a collateral source would result in a windfall to the carrier; second, uninsured motorist coverage is mandated by statute and any variations from that statutory mandate should come from the legislature; third, workmen's compensation only covers a fraction of what tort damages would cover, and a dollar-for-dollar set-off does not recognize this reality; and fourth, there is no public policy against an individual purchasing additional uninsured motorist coverage to protect himself and his family against the shortfall which could result from a dependency on workmen's compensation.

552 A.2d at 1388.

State Farm argues that if the worker's compensation exclusion violates public policy, it is void or voidable only as to the minimum coverages required by statute. According to State Farm, where the policy limits exceed the statutory minimum required by the state's financial responsibility law, State Farm's liability is limited to the coverage required by statute, $25,000. In support of its position, *State Farm cites Cimarron Ins.*

*Co. v. Croyle*, 479 N.W.2d 881, 884 (S.D. 1992).

*Cimarron* held that "where the policy limits exceed the statutory minimum, *the insurer's liability is limited to the coverage required by* " the State's financial responsibility statute. 479 N.W.2d at 885.[1] Unlike *Cimarron*, however, this case revolves around the interpretation of SDCL 58–11–9, which provides that no motor vehicle liability policy of insurance may be issued in South Dakota with respect to any motor vehicle registered or principally garaged in this state unless uninsured motorist coverage is provided therein *"in limits for bodily injury or death equal to the coverage provided by such policy for bodily injury and death* [.]" [2] (Emphasis added) (As noted by the district court in *Baker v. Continental Western Ins. Co.*, 748 F.Supp. 716 (D.S.D.1990):

> South Dakota's uninsured motorist statute should [ ] be viewed in the context of a nationwide public policy of expanding the coverage provided by insurance carriers. To effectuate coverage for victims of financially irresponsible motorists thus left with

no remedy under the singular scheme of mandatory liability insurance, the South Dakota legislature elected to provide for a dual system of insurance coverage and "it is for this reason that the legislature made uninsured motorist coverage mandatory in every automobile policy issued in this state."

*Id.* at 718 (citation omitted)).

■ Isaac's policy provided for bodily injury liability coverage in the amount of $100,000 per person/$300,000 per accident. Therefore, Isaac was statutorily required to purchase uninsured motorist coverage in the amount of $100,000 per person/$300,000 per accident under SDCL 58–11–9. The policy limits here were equal to but did not exceed the statutory minimum required by SDCL 58–11–9. Having purchased this amount of coverage, Isaac was entitled to its full protection as against the UIM insurer or carrier. Under SDCL 62–4–39 [3] and SDCL 62–4–40,[4] an employer who has paid worker's compensation benefits is entitled to subrogation.

---

1. "When *Cimarron Ins. Co. v. Croyle*, 479 N.W.2d 881 (S.D.1992) spoke out against such [household] exclusions, the legislature (as the final arbiter of public policy) acted quickly to change that result" and "amended South Dakota's financial responsibility law (SDCL 32–35–70) to allow household exclusions." *Brandenburg v. Allstate Ins. Co.*, 815 F.Supp. 317, 319 (D.S.D.1993).

2. SDCL 58–11–9 provides in full:

> No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle may be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto in limits for bodily injury or death equal to the coverage provided by such policy for bodily injury and death, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom. However, the coverage required by this section may not exceed the limits of one hundred thousand dollars because of bodily injury to or death of one person in any one accident and subject to the limit for one person, three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident, unless additional coverage is requested by the insured.

Any policy insuring government owned vehicles may not be required to provide uninsured motorist coverage.

3. SDCL 62–4–39 provides:

> If compensation has been awarded and paid under this title and the employee has recovered damages from another person, the employer having paid the compensation may recover from the employee such an amount equal to the amount of compensation paid by the employer to the employee, less the necessary and reasonable expenses of collecting the same.

4. SDCL 62–4–40 provides:

> If compensation is awarded under this title, the employer having paid the compensation, or having become liable therefor may collect in his own name or that of the injured employee, or his personal representative, if deceased, from any other person against whom legal liability for damage exists, the amount of such liability and shall hold for the benefit of the injured employee or his personal representative, if deceased, the amount of damages collected in excess of the amount of compensation paid such employee or his representative, less the proportionate necessary and reasonable expense of collecting the same, which expenses may include an attorney's fee not in excess of thirty-five per cent of damages so collected, and shall be subject finally to the approval of the department.

We find *Cimarron* distinguishable and State Farm's argument without merit.

As noted in *National Farmers,* if the legislature had intended to grant UIM carriers a set-off for worker's compensation benefits received by the insured, it could have statutorily provided one. *National Farmers,* 516 N.W.2d at 320–21. Therefore, under this court's decision in *National Farmers,* State Farm's policy provision purporting to reduce UIM benefits paid by worker's compensation is void as a matter of public policy. *National Farmers,* at 320–21. The trial court's ruling that the set-off provision was void as against public policy is affirmed.

### 2. Whether the trial court erred in giving Instruction No. 20.

Jury Instruction No. 20 provided:

You are instructed as a matter of law that the offset provision contained in the State Farm auto policy for workmen's compensation benefits paid is contrary to the public policy and statutes of the State of South Dakota and is therefore void.

You are further instructed that this provision has never been interpreted by the South Dakota Supreme Court and this is one of the factors you may consider in determining whether or not State Farm's position relative to this clause in its insurance contract was fairly debatable and reasonable under all of the circumstances.

State Farm argues that the submission of this jury instruction was error because it "needlessly, erroneously, and prejudicially advised the jury of the Judge's conclusion that this Court would invalidate the off-set provisions of State Farm's policy relating to an insured's receipt of worker's compensation benefits." According to State Farm, "Instruction No. 20 gave lip service to this critical concept, but only as an afterthought to its needless declaration of the error of State Farm's adjusters, supervisors, trial experts and, indeed trial counsel, up to the eve of trial. A more crippling blow is unimaginable." Isaac counters that State Farm waived any objection to this jury instruction.

### A. Waiver.

█ "The failure of a court to correctly or fully instruct the jury is not reviewable unless an objection or exception to the instruction identifying the defect therein with sufficient particularity was taken or a written instruction correctly stating the law was requested." *Wells v. Billars,* 391 N.W.2d 668, 670 (S.D.1986); SDCL 15–6–51(b). Isaac proposed the following jury instruction:

You are instructed as a matter of law that the offset provision contained in the State Farm auto policy for workmen's compensation benefits paid is contrary to the public policy and statutes of the State of South. Dakota and is therefore void.

In response, State Farm argued:

Well, it's pretty obvious my position on this has been argued several different times, of course, and the jury is entitled to know that. *You ruled as a matter of law now that that provision in the policy is void, but to leave it at that is prejudicial because you don't further instruct the jury that State Farm is not liable, however, for the failure to settle a claim where it's due to an interpretation of a coverage issue which is not previously ruled upon by the .South Dakota Supreme Court.* To give this instruction as worded, is nothing more or nothing less than a directed verdict.

. . . .

It would be extremely prejudicial for this Court to say because we didn't anticipate how you might rule on this policy provision that State Farm is negligent as a matter of law in their interpretation of the policy when it is conceded by the testimony and I'm sure by Mr. Carpenter that there was no South Dakota Supreme Court decision on this precise question concerning this provision in the State Farm policy, so the issue for the jury is whether or not State Farm took an unreasonable interpretation of that provision in handling of this case which is a fact question and just to tell them that you're now ruling that provision was void is not sufficient.

In response to this argument by State Farm, the trial court added the second paragraph to Instruction No. 20 concerning the fact that

the Supreme Court had not yet decided the validity of the provision. Then the circuit court read the entire instruction into the record and State Farm replied, "That would take care of my objection." Although Isaac now claims this constitutes waiver, State Farm then proposed the following instruction:

Edel Isaac's auto policy contains a provision providing in effect that the coverage for an uninsured motorist claim ("U" coverage) shall be reduced by any amount paid to the insured, Edel Isaac, under any worker's compensation benefits or similar law. In this case the evidence is undisputed that the applicable "U" coverage at the time of the accident was $100,000; and that Edel Isaac had received worker's compensation benefits from the State of South Dakota totaling approximately $38,000, at the time when State Farm offered $100,000 to settle all claims. The issue for the jury is whether State Farm acted reasonably in considering said set-off provision at the time it extended the policy limits, for a dismissal of all claims.

In response to an inquiry by the court regarding this proposed instruction, State Farm replied: "Well, you already ruled as a matter of law and I'm just proposing that to protect my record." Isaac and State Farm continued to preserve the record as to their respective objections to Instruction No. 20 during the final settling of instructions.

Isaac: If it please the Court, I will simply ask for the same record I made this morning on paragraph 2.

The Court: Paragraph 2 which came from Mr. Ireland, I believe.

Isaac: Yes, Your Honor. I have nothing else to add.

State Farm: Well, of course, we will preserve our record that we disagree with the Court finding that the workmen's compensation off-set provision is void under South Dakota law and so object to the instruction on that basis.

This record indicates that State Farm preserved its record in regard to its claim that

the trial court erred in giving Instruction No. 20. Additionally, State Farm had filed a Motion In Limine to prevent any reference to the trial court's ruling that the set-off provision was void as being contrary to public policy. State Farm's Motion was denied. Therefore, the record shows State Farm sufficiently objected to the instruction and "this is not a case of invited error." *Beyer v. Cordell,* 420 N.W.2d 767, 771 (S.D.1988). There was no waiver.

**B. Instruction No. 20 as error.**

■■■ The question for the jury was whether State Farm acted in bad faith in relying on its worker's compensation set-off provision in denying coverage. Whether an insurance company acted in bad faith is a question of fact for the jury or other trier of fact. *Kunkel v. United Security Ins. Co.,* 168 N.W.2d 723 (S.D.1969) (stating that the question of good faith is a fact issue for the jury or other trier of fact). The jury should determine the bad faith question based on the facts and law available to State Farm at the time it made its decision to deny coverage.[5] Therefore, the trial court's later ruling that the set-off provision was void as a matter of public policy was not material or relevant to the issue of whether State Farm was acting in bad faith at the time it denied coverage. Accordingly, it was error for the trial court to advise the jury of its ruling. Whether this error constitutes reversible error is the next question.

**C. Reversible error.**

In addition to the protection provided by paragraph 2 of Instruction No. 20, State Farm was not precluded from arguing that at the time that they relied upon the set-off provision, there was no South Dakota case on point. In fact, during closing argument, State Farm argued:

Judge Grosshans has given you an instruction that it's void under South Dakota law. That's his instruction. You, also, know, however, that there's never been a Supreme Court decision, so at least one good

---

5. *See generally Champion v. United States Fidelity and Guaranty Co.,* 399 N.W.2d 320, 323–24 (S.D. 1987) which adopted the *Savio* two-prong test in

cases of alleged bad faith failure to pay by a workers' compensation carrier. A discussion of this case appears in Issues 3 and 4.

thing out of this trial is that, I guess, that is an issue that will finally be determined by our South Dakota State Supreme Court. We do know that *when* we were considering that provision, there was a definite policy provision which provided for reduction of the benefits.

(Emphasis added.) Additionally, Jury Instruction No. 14 provided in part:

[U]nder this test concerning bad faith claims, you are further instructed that an insurance company may challenge claims which are fairly debatable and can be held liable only where it has intentionally or recklessly denied or failed to pay a claim without a reasonable basis.

"In determining whether a jury instruction resulted in prejudicial error, the instructions are reviewed as a whole." *Beyer,* 420 N.W.2d at 770. Viewing these instructions as a whole and considering the fact that State Farm was not precluded from arguing that it was not bad faith for its adjusters to reasonably believe that the set-off provision was valid and effective at the time coverage was denied, State Farm has not shown that the trial court committed reversible error in giving Instruction No. 20.

### 3. Whether the trial court erred in giving Instruction No. 23.

Jury Instruction No. 23 provided:

Negligence on the part of Plaintiff's former attorneys, if any, does not excuse Defendant State Farm Insurance Company from its duty of good faith and fair dealing. However, whether or not Plaintiff's former attorneys caused State Farm to deny or delay payment of benefits is a circumstance you may consider in determining whether or not State Farm had a reasonable basis for denying her claim or delaying the payment of benefits. *Contributory fault is not a defense to Plaintiff's bad faith cause of action.*

(Emphasis added.) State Farm argues that the trial court erred in giving Instruction No.

23 because the last sentence resulted in a contradictory jury instruction. Although this last sentence appears somewhat contradictory as claimed by State Farm, it is more redundant than prejudicial. In fact, the instruction basically indicates that negligence or contributory fault may be a factor or circumstance for the jury to consider in determining bad faith.

■ Jury instructions are considered as a whole and will not be deemed erroneous if they sufficiently and correctly state the applicable law. *Holmes v. Wegman Oil Co,* 492 N.W.2d 107, 113 (S.D.1992). Both parties rely upon *Kelly v. State Farm Mut. Auto. Ins. Co.,* 764 F.Supp. 1337 (S.D.Iowa 1991) for support, neither party claiming that the law, as stated in *Kelly,* is incorrect.

In *Kelly,* plaintiffs alleged that State Farm breached its duty of good faith and fair dealing. In response, State Farm plead comparative fault as an affirmative defense. The District Court held that contributory fault is not a defense to the bad faith cause of action, noting that "[a] plaintiff's breach of obligations under the insurance contract does not excuse the insurer from its duty of good faith and fair dealing."

■ Under SDCL 20–9–2, contributory negligence of the plaintiff is a defense only "in actions brought to recover damages for injuries to a person or to his property *caused by the negligence of another.*" SDCL 20–9–2. Bad faith actions, however, must be predicated on more than the negligence of another.

In *Champion v. United States Fidelity and Guaranty Co.,* 399 N.W.2d 320 (S.D. 1987), we adopted the *Travelers Ins. Co. v. Savio,* 706 P.2d 1258 (Colo.1985), two-pronged test "for bad faith set forth originally in *Anderson v. Continental Ins. Co,* 85 Wis.2d 675, 271 N.W.2d 368 (1978)[.]" The test "requires a plaintiff to demonstrate 'an absence of a reasonable basis for denial of policy benefits *and* the knowledge or reckless disregard of a reasonable basis for a denial,' and which provides that an insurance company will be held liable only when it 'intentionally denies * * * a claim without a reasonable basis.'" *Simpkins v. Great West Cas. Co,* 831 F.2d 792 (8th Cir.1987). Be-

cause the tort of bad faith is an intentional tort, and therefore one which is not predicated on mere negligence, the defense of contributory negligence was not available to State Farm. *See Kelly,* 764 F.Supp. at 1340 ("[U]nless the legislature specifically provides otherwise, the comparative fault statute does not apply to causes of action where the common law does not recognize negligence as a defense."). In view of the above, State Farm failed to show error. *Holmes,* 492 N.W.2d at 113.

#### 4. Whether the trial court erred in giving Instruction No. 17 and in failing to give State Farm's proposed Instructions No. 2 and No. 9.

Jury Instruction No. 17 provided: "In considering whether an insurance company acted in bad faith, you may consider the character and extent of any negligence by the insurance company." State Farm argues that "[w]hile this instruction is 'accurate,' it is fatally incomplete and thus misleading. Without the further qualification of this concept, as embodied in Defendant's requested Instructions No. 2 and 9, the jury was invited to determine the bad faith issue solely by reference to Defendant's negligence."[6]

▮ As noted above, jury instructions are viewed as a whole and are not erroneous if they correctly state the law and inform the jury. *Cody v. Edward D. Jones & Co,* 502 N.W.2d 558, 563 (S.D.1993) (citations omitted). As the party seeking to set aside the verdict because of erroneous instructions,

State Farm must establish that the disputed instructions were prejudicial. *Id.* Instruction No. 17 must be examined in light of other jury instructions. *Id.*

Jury Instruction No. 14 provided:

Under South Dakota law, bad faith may be established by a showing by a preponderance of the evidence that:

(1) That there was an absence of a reasonable basis for the denial of policy benefits; and

(2) The knowledge of reckless disregard of a reasonable basis for denial.

Knowledge of a lack of a reasonable basis for denial may be inferred or imputed to the insurance company where there is a reckless indifference to facts or to proofs submitted by the insured.

However, under this test concerning bad faith claims, you are further instructed that an insurance company may challenge claims which are fairly debatable and can be held liable only where it has intentionally or recklessly denied or failed to pay a claim without a reasonable basis.[7]

While Instruction No. 17 by itself may have been incomplete and misleading, Instruction No. 14 accurately stated South Dakota law regarding bad faith as set-forth in *Champion,* 399 N.W.2d 320 (S.D.1987) in Issue 3. The jury was not instructed "that negligence could be the sole factor for a determination of bad faith," but rather, was advised that an insurance company "can be held liable only where it has intentionally or

---

6. State Farm's proposed Instruction No. 2 provided:

You are instructed that the South Dakota law also provides that an insurance company is not liable for the failure to settle a claim where the refusal is due to a mere error of judgment or mistake on the insurance company's part, or where there is a coverage question which has never been interpreted by the South Dakota Supreme Court and the interpretation relied upon by the insurance company was not unreasonable. State Farm's proposed Instruction No. 9 provided:

An insurer does not breach its duty of good faith simply because it makes a mistake or acts negligently. An insurer acts negligently when it

fails to conduct itself as a reasonably prudent insurer would under the same or similar circumstances. Rather, for its conduct to breach its duty of good faith, an insurer must act intentionally. That is, it must act with knowledge or reckless disregard that it lacks a reasonable basis for its actions. "Intentional" means that the defendant wanted to cause injury or knew that injury was substantially certain to occur from its conduct. "Reckless disregard" means that the defendant deliberately disregarded a high degree of probability that injury would occur from its conduct.

7. Additionally, Instruction No. 15 provided definitions for "intentional" and "reckless disregard."

recklessly denied or failed to pay a claim without a reasonable basis." State Farm has failed to demonstrate that the instructions, taken as a whole, were erroneous.

**5. Whether the trial court properly submitted the issue of punitive damages to the jury.**

On April 10, 1992, the trial court held an evidentiary hearing on punitive damages under SDCL 21–1–4.1. The trial court issued Findings of Fact and Conclusions of Law and concluded that, based on clear and convincing evidence, there was a reasonable basis to believe that State Farm was guilty of willful, wanton or malicious conduct as required by SDCL 21–1–4.1.[8] Isaac was allowed to proceed with discovery.

Under SDCL 21–1–4.1, the trial court applies

a clear and convincing evidence standard to determine, before any such claim may be submitted to discovery or to the jury, whether there is a *reasonable basis* to believe there has been [ ] willful, wanton, or malicious conduct on the part of the party claimed against. This statute merely requires clear and convincing evidence to show a *reasonable basis. Flockhart v. Wyant,* 467 N.W.2d 473, 475 (S.D.1991). Thus, the proponents' burden is a preliminary, lower-order quantum of proof than must be established at trial. Such proof is a prima facie case for punitive damages. *Vreugdenhil v. First Bank of S.D.,* 467 N.W.2d 756 (S.D.1991).

*Case v. Murdock,* 488 N.W.2d 885, 891 (S.D. 1992).

Malice is an essential element of a claim for punitive damages, however, malice sufficient to support exemplary damages may be either actual, malice in fact, or presumed, legal malice. Actual malice is a positive state of mind, evidenced by the positive desire and intention to injure another, actuated by hatred or ill-will towards that person. Malice is so defined in

*Gamble v. Keyes,* 43 S.D. 245, 178 N.W. 870, 872 (1920). Presumed, legal malice, on the other hand, is malice which the law infers from or imputes to certain acts. *Hannahs v. Noah,* 83 S.D. 296, 303, 158 N.W.2d 678, 682 (1968); 52 Am.Jur.2d § 2, P 163. Thus, while the person may not act out of hatred or ill-will, malice may nevertheless be imputed if the person acts willfully or wantonly to the injury of the other. In this context, however, we have said:

Malice as used in reference to exemplary damages is not simply the doing of an unlawful or injurious act, it implies that the act complained of was conceived in the spirit of mischief or of criminal indifference to civil obligations.

*Dahl v. Sittner,* 474 N.W.2d 897, 900 (S.D. 1991) (citing *Hannahs,* 83 S.D. at 303, 158 N.W.2d at 682). "A claim for presumed malice can be shown by demonstrating a disregard for the rights of others." *Case,* 488 N.W.2d at 891 (citing *Flockhart,* 467 N.W.2d at 475).

State Farm claims the trial court erred in denying its Motion to Dismiss the punitive damage claim because there was no evidence of actual or presumed malice. The trial court's determination that there was a reasonable basis to submit the issue of punitive damages to the jury will not be disturbed absent a showing that the trial court's findings of fact are clearly erroneous. *Case,* 488 N.W.2d at 891 (citation omitted).

There is evidence supporting the trial court's position that State Farm acted in reckless disregard of the rights of Isaac. Included in the actions taken by State Farm evidencing this reckless disregard is the fact that when State Farm did offer their policy limits of $100,000, the offer was conditioned on a release by Isaac of any bad faith claim that she may have with respect to State Farm's handling of the claim. Clear and convincing evidence existed to form a reasonable basis to present the issue of punitive

---

**8.** SDCL 21–1–4.1 provides:

In any claim alleging punitive or exemplary damages, before any discovery relating thereto may be commenced and before any such claim may be submitted to the finder of fact, the court

shall find, after a hearing and based upon clear and convincing evidence, that there is a reasonable basis to believe that there has been willful, wanton or malicious conduct on the part of the party claimed against.

damages to the jury. The trial court was not clearly erroneous.[9] *Id.*

### 6. Whether the trial court erred in denying State Farm's offer of proof.

■■■ State Farm argues that the trial court erred in not allowing State Farm to introduce evidence that there was no visible damage to the bumper or rear end of Isaac's car. According to State Farm, this was relevant evidence on the force of impact which also went to the credibility of Isaac.

SDCL 15–6–83 allows a majority of the judges in each circuit court to make and amend rules governing practice not inconsistent with the rules contained in Chapter 15–6. Therefore, pursuant to SDCL 15–6–83, the Seventh Judicial Circuit has adopted a local rule requiring civil litigants to exchange pretrial conference checklists two days before the scheduled pretrial conference. The checklist requires parties to disclose their trial witnesses, the nature of their testimony, and a list of trial exhibits.

Following State Farm's offer of proof, the trial court found that at the time of the pretrial conference, March 19, 1993, State Farm did not list any of the proposed witnesses or exhibits at issue even though their identity was known and the bumper was in State Farm's possession. In fact, the proposed evidence and its existence was made known to the trial court and Isaac less than three days before the jury trial was to commence.

"A trial court's evidentiary rulings are presumptively correct. In reviewing the trial court's ruling, we must determine if the trial court abused its discretion." *Opp v. Nieuwsma*, 458 N.W.2d 352, 357 (S.D.1990). A review of the transcript of State Farm's offer of proof indicates that a claims adjuster for

State Farm spoke with the purchaser of the car regarding any damage to the rear bumper of the car at the time of purchase as least as early as March 5, 1993. Initial photographs were taken at that time and on or about March 12, 1993, the adjuster took additional pictures of the bumper of the car. At a later time, the adjuster had the bumper removed to bring to trial as an exhibit.

In denying State Farm's offer of proof, the trial court noted that this was a crucial issue and State Farm had a duty to update its interrogatories and discovery. State Farm had the evidence prior to the pretrial conference and yet failed to divulge the names of the witnesses or the evidence at the time of the conference, or even within a reasonable time prior to trial. State Farm has failed to demonstrate an abuse of discretion on the part of the trial court.

### 7. Whether the trial court erred in awarding Isaac attorney's fees, prejudgment interest, and costs.

State Farm objected to the award of attorney's fees, prejudgment interest, and costs.

### A. Attorney's fees.

"As a general rule, attorney fees may only be awarded by contract or when specifically authorized by statute." *City of Sioux Falls v. Kelley*, 513 N.W.2d 97, 111 (S.D.1994) (citation omitted). The trial court awarded Isaac attorney's fees under SDCL 58–12–3 which provides that in all actions or proceedings commenced against an insurance company on any policy or certificate of any type or kind of insurance, if it appears from the evidence that such company has refused to pay the full amount of such loss, and that such refusal is vexatious or without reasonable cause, the trial and the appellate court

---

9. State Farm further argues that it "is not clear from the record that the trial court distinguished the standards, the one for bad faith being the two-part test from the *Champion* case, and the other standard for punitive damages which requires a showing of actual or presumed malice." We find this argument without merit. The trial

court specifically concluded in its Findings of Fact and Conclusions of Law that: "Based on clear and convincing evidence, there is a reasonable basis to believe that the Defendant, State Farm, was guilty of willful, wanton or malicious conduct as required by SDCL 21–1–4.1."

shall, if judgment or an award is rendered for plaintiff, allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected as a part of the costs. SDCL 58–12–3.

 State Farm argues that the trial court incorrectly awarded attorney's fees under SDCL 58–12–3. According to State Farm, "a finding that an insurance company lacked good faith does not mean ipso facto that its conduct was vexatious or without reasonable cause."

 While we agree with State Farm that a finding of bad faith on the part of an insurance company does not mean "ipso facto" that its conduct was vexatious or without reasonable cause,[10] whether State Farm's conduct was vexatious or without reasonable cause is a question of fact, reviewed by this court under the clearly erroneous standard. *North Star Mut. Inc. Co. v. Kneen,* 484 N.W.2d 908, 913 (S.D.1992). The trial court found at the Hearing on Taxation of Costs that "State Farm delayed in investigation, settlement and evaluation for years. They finally refused to unconditionally pay amounts due and owing under the policy without a dismissal of the bad faith claim and this conduct clearly falls within the 'without reasonable cause and vexatious standard' of 58–12–3." Under the record before us, we cannot say that this finding on the part of the trial court was clearly erroneous. *Id. Cf. Crabb,* 205 N.W.2d at 639 (S.D.1973) (noting that the situation in *Crabb* was unlike *Tracy v. T & B Const. Co. et al.,* 85 S.D. 337, 182 N.W.2d 320 (1970) where the trial court expressly found the insurer's refusal to pay vexatious and without reasonable cause).

 State Farm further argues that under *Crabb,* attorney's fees can only be recovered in the contractual claim against the insurance company on a policy of insurance.

As noted by the Eighth Circuit Court of Appeals in *Kirchoff v. American Cas. Co.,* 997 F.2d 401 (8th Cir.1993), "South Dakota law on this question is clear." *Id.* at 406 (citing *Crabb,* 205 N.W.2d at 639). A bad faith claim "is tortious in nature i.e., for the wrongful refusal to settle within the policy limits of its insured," and not an action against an insurance company on a policy of insurance within the contemplation of SDCL 58–12–3. *Crabb,* 205 N.W.2d at 639. Therefore, the portion of attorney's fees related to the bad faith claim, as opposed to the contractual claim, should have been excluded. We reverse and remand for a redetermination of attorney's fees in accordance with this decision.[11]

## B. Prejudgment interest.

 Isaac was awarded the policy limit of $100,000 in damages for personal injuries. The trial court awarded prejudgment interest from the date Isaac first demanded the policy limit. State Farm argues that this was error on the part of the trial court. SDCL 21–1–11 provides:

Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt.

Under SDCL 21–1–11, Isaac is entitled to prejudgment interest only if damages are certain or capable of being made certain. *Twin City Testing and Engineering La., Inc. v. Smith,* 393 N.W.2d 456 (S.D.1986) (citations omitted). "Prejudgment interest is not to be awarded if the damages are uncertain until determined by the trier of fact." *Id.* (citations omitted).

---

**10.** In *Crabb v. National Indemnity Co.,* 205 N.W.2d 633, 639 (S.D.1973) this court noted that "a finding that an insurer lacked good faith does not signify its conduct was 'vexatious or without reasonable cause,' as a matter of law. It merely means the insurer failed to discharge its fiduciary obligation to act in good faith in the defense and settlement of a claim against the insured." *Id.* at 639.

**11.** Isaac has filed a Motion for Award of Appellate Attorney's Fees. SDCL 58–12–3 provides for appellate attorney's fees, but only to the extent the fees are for work done on the contractual claim. *Crabb,* 205 N.W.2d at 639. Therefore, Isaac's motion is granted to the extent the fees are in conformity with our decision on Issue 7(A). On remand, the trial court shall make this determination.

As of October 25, 1990, the date Isaac demanded the full amount of the uninsured policy benefits, the damages incurred by Isaac were certain or capable of being made certain. In fact, when Ryno valued Isaac's claim in a memo dated October 3, 1991, she recommended that State Farm attempt to settle Isaac's claim for the policy limit of $100,000. The records Ryno used to make the valuation were the same records available to State Farm over a year earlier. In view of this, State Farm has failed to show that the trial court erred in determining damages were certain or capable of being made certain in the amount of the policy limit of $100,000. Therefore, the trial court's award of prejudgment interest is affirmed.

## C. Expert witness fees as costs.

State Farm argues that the trial court erred in awarding expert witness fees as costs under SDCL 15–17–37, which provides:

> The prevailing party in a civil action or special proceeding may recover expenditures necessarily incurred in gathering and procuring evidence or bringing the matter to trial. Such expenditures include costs of telephonic hearings, costs of telephoto or fax charges, fees of witnesses, interpreters, translators, officers, printers, service of process, filing, expenses from telephone calls, copying, costs of original and copies of transcripts and reporter's attendance fees, court appointed experts and other similar expenses and charges. These expenditures are termed "disbursements" and are taxed pursuant to § 15–6–54(d).

This court addressed expert witness fees under SDCL 15–17–37 in *Nelson v. Nelson Cattle Company*, 513 N.W.2d 900 (S.D.1994). According to *Nelson*, SDCL 15–17–37 does not allow "the taxation of the compensation and expenses of expert witnesses in excess of the statutory witness fees provided in SDCL 19–5–1." *Nelson*, at 908. *Nelson* also stated, however, that SDCL 15–17–37 "does not express any intent to be retroactive." *Id.*

(citing SDCL 2–14–24). Isaac filed a Complaint on October 29, 1990. SDCL 15–17–37 was enacted in 1992 and became effective July 1, 1992. Therefore, because this case was commenced prior to the enactment of SDCL 15–17–37, "[t]he trial court's taxation of disbursements for the compensation and expenses of expert witnesses in excess of the statutory witness fee is reversed and remanded for retaxation in accordance with SDCL 19–5–1." *Id. See First Nat'l Bank of Minneapolis v. Kehn Ranch, Inc.,* 394 N.W.2d 709, 716 (S.D.1986).[12]

## 8. Notice of review.

In view of our decisions herein and a general lack of merit, we do not reach the issue of whether the trial court erred in failing to direct a verdict in Isaac's favor on the question of liability. *Nelson,* at 908. Secondly, although a contingent fee arrangement "may be perfectly valid and proper as between an attorney and his client, it does not necessarily follow that such fee is a reasonable fee to be taxed" under SDCL 58–12–3. *City of Sioux Falls v. Kelley,* 513 N.W.2d 97, 111 (S.D.1994); Couch, Cyclopedia of Ins. Law, § 58:147.

Affirmed in part, reversed in part 7(A) and 7(C) and remanded.

MILLER, C.J., and WUEST, J., and HENDERSON, Retired Justice, concur.

AMUNDSON, J., concurs specially.

KONENKAMP, J., not having been a member of the Court at the time this case was submitted to the Court, did not participate.

AMUNDSON, Justice (concurring specially).

State Farm initially took the position that Isaac had no coverage under her policy in regards to the Bordeaux accident. She was advised to look to Bordeaux for any recovery

---

12. Under *Kehn:* "It is settled law in this state that a statute will not operate retroactively unless the legislative act clearly expresses an intent that it so operate. Also, under SDCL 2–14–24, no civil action commenced before the present code of laws took effect is affected by its provisions.

SDCL 15–17–35 indicates no retroactive intent. Accordingly, we must conclude that the Kehn lawsuit filed against Milbank in 1983 is not affected by a statute subsequently enacted in 1984."

notwithstanding the mandatory uninsured motorist coverage contained in the policy she purchased from State Farm.

After taking the no coverage position, State Farm when contacted by Isaac's attorney, persisted in attempting to totally deny the claim. This position is shown in Exhibit 14, an internal memorandum from Karla Ryno, a State Farm claims representative, to her supervisor which stated in part:

> As per our conversation, I was attempting to feel Attorney DeGeest out regarding the denial of the claim based upon workmen's compensation.

Isaac's expert gave an opinion in front of the jury that there was no reasonable basis for a denial of coverage by State Farm and doing same constituted bad faith in this matter. State Farm's expert testified that the no coverage position taken by State Farm in this case was wrong and a strong indicia of bad faith. However, the expert further opined that when reviewing the total picture of how the claim was processed, State Farm's conduct in this case did not constitute bad faith handling of Isaac's claim. Based on these conflicting opinions, the jury as the fact-finder had to decide the weight, if any, to be given to these expert opinions. *Century 21 Associated Realty v. Hoffman*, 503 N.W.2d 861 (S.D.1993).

The jury subsequently returned a general verdict for Isaac. When such a verdict is returned and appealed, the Supreme Court will view the evidence in a light most favorable to sustain the jury's verdict. *Brandriet v. Norwest Bank of South Dakota, N.A.*, 499 N.W.2d 613 (S.D.1993). Moreover, if the verdict is susceptible to more than one construction, the Supreme Court applies the construction which upholds the verdict. *BankWest, Inc. v. Valentine*, 451 N.W.2d 732 (S.D.1990). Applying such precedent to this case, it is obvious that the jury could have found that State Farm's total denial of coverage initially constituted bad faith on its part. Having so found, it is immaterial to the case whether or not State Farm believed its policy provided for a reduction of coverage. State Farm's set-off or reduction of coverage position came after the total denial position.

Therefore, I agree that the giving of Instruction No. 14 was error, but for the reasons set forth above, it was not prejudicial to this case.